## ALBERT B. STEBBINS v. THE TOWNSHIP OF KEENE.

*Bridge—Duty to keep in repair—Negligence of township—Notice to officers of defects.*

1. Plaintiff, while crossing a bridge of defendant's with a steam threshing machine and appurtenances, was injured by its breaking down. The bridge was built prior to the passage of act 244, Laws of 1879—under which plaintiff sued for damages—and on a plan adapted to the hauling over it, in safety, of loads of the *weight* of plaintiff's, and such loads had crossed it repeatedly. The stringers were large and substantial, but, as the testimony showed, had become very rotten in their bearings, and broke down for that reason.

    *Held*, that defendant, while maintaining the bridge, was bound to keep it in such repair as was required by a bridge of that kind, distinguishing the case from that of *Fulton Iron Works v. Kimball*, 52 Mich. 146.

2. Where, in *such* a case, it appears from the testimony that some three or four months before the accident the overseer of highways repaired the bridge, removing and replacing some of the plank and examining a stringer, which was thought to be somewhat defective, but did not remove same, but put a small beech one beside it; that he made no examination of the remaining stringers, or of their ends, and that soon after a man who assisted the overseer, in a conversation with defendant's commissioner of highways about the repairs, told the commissioner "that they ought to have a new bridge:"

*Held*, that under such circumstances the propriety of a fuller examination would naturally occur to a prudent man having the responsibility of keeping the bridge in order, which was known to need attention, from wear or decay. That it was competent to argue to the jury, upon the facts, whether the occasion of making repairs, and the discovery of defects, did not require the overseer to make a more careful examination of the whole bridge, and whether his failure so to do, and to make the necessary repairs, was not negligence rendering the township liable.

Error to Ionia. (Smith, J.) Argued February 12, 1886. Decided February 17, 1886.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*F. D. M. Davis* and *Mitchel & McGarry*, for appellant:

Contended that there must be a limit to the weight of loads, for the safe and secure passage of which over country highways, a township must provide; that it is unreasonable to require such municipality to construct its bridges in a manner to guard against unknown and unforeseen emergencies, which would be impracticable: Wingate, Maxim 161, 300; 3 Shars. Bl. 144; *Medina v. Perkins*, 48 Mich. 67. That townships are not required to make preparations for the safety or convenience of those who undertake to use the highway in an unusual or extraordinary manner, involving peculiar and special danger and peril, whether it be in respect to the kind, magnitude or construction of the carriage or machinery used, or the bulk or weight of the property transported: *Gregory v. Adams*, 14 Gray, 242. It was not claimed that the defendant, through its officers, had *actual* notice of the defective condition of the bridge. Such information could only be acquired by the observation of such officers, or by information conveyed to them: *Dewey v. City of Detroit*, 15 Mich. 307. The rule contended for is, that,

in the absence of such *actual* notice, the defects must have been apparent to ordinary observation. See case last cited; *Manchester v. City of Hartford*, 30 Conn. 118; *Doulon v. City of Clinton*, 33 Iowa, 397; *Reed v. Northfield*, 13 Pick. 98; *Hart v. Brooklyn*, 36 Barb. 226; *Garrison v. Mayor, etc., of N. Y.*, 5 Bows. 497; Sherman & Redfield on Neg., Sec. 407; *Vandyke v. Cincinnati*, 1 Disney (O.), 532.

*Wilson & Trowbridge* and *A. A. Ellis*, for plaintiff:

Cited on the question of notice to defendant of the dangerous condition of the bridge: *Stebbins v. Keene*, 55 Mich. 552; *Medina v. Perkins*, 48 Mich. 67; *Chapman v. Erie R. R. Co.*, 55 N. Y. 584; *Mich. Cent. R. R. Co. v. Gilbert*, 46 Mich. 182; *Manchester v. Hartford*, 30 Conn. 118–121; *Weisenburg v. The City of Appleton*, 26 Wis. 56; *City of Aurora v. Hillman*, 90 Ill. 61; *Reed v. Northfield*, 13 Pick. 94–8; *Hover v. Barkhoof*, 44 N. Y. 113–15. As to right of plaintiff to use the highway for the purpose of traveling over it with his engine, in and about his business, cited *Macomber v. Nichols*, 34 Mich. 212; *Medina v. Perkins*, 48 Mich. 71; *Fulton Iron Works v. Kimball*, 52 Mich. 150; *Stebbins v. Township of Keene*, 55 Mich. 552; *Moses v. R. R. Co.*, 21 Ill. 516–23; *Rapho v. Moore*, 68 Penn. St. 404; *Hamilton v. City of Boston*, 14 Allen, 475. As to negligence of township by the officers, cited *Howe v. City of Lowell*, 101 Mass. 99, and *Medina v. Perkins*, and *Stebbins v. Township of Keene*, above cited.

CAMPBELL, C. J. This case, which was before us and decided at the January term, 1885 (55 Mich. 552), now comes up again after a new trial. Several assignments of error appear on the record, but counsel for defendant, waiving the rest, desire only a consideration of such points as relate to the legal sufficiency of the bridge which broke down under plaintiff's machine, and the notice of its condition.

The record now differs very considerably from the former one in filling up some gaps, and in fixing the matters then left in doubt as to the surroundings more definitely in favor of plaintiff. The effect of these variations was, no doubt, fully argued to the jury, who have again found for plaintiff. We have nothing to do with their conclusions of fact, and can only refer to the law questions submitted.

It is sufficient, then, to say that on the second of October, 1882, plaintiff, who had been threshing with a steam threshing-machine (which had a propelling engine and water tank connected), in a field adjacent to the highway, had occasion to move the machine across a small gully or runway in the field, and, not finding a practicable crossing, came out into the road, which he had a right to do, and undertook to go across a bridge over the same water-bed, and the bridge broke down. His leg caught in the machinery, and was injured so as to need amputation. The bridge was low, not being more than two and a half or three feet from the bed of the stream. The tank, according to some of the testimony, although there was some to the contrary, did not rest upon the bridge, and the weight which broke it down was in that case that of the machine and engine. The testimony on the present trial indicated, what did not appear as clearly before, that the wheels were in the proper track, and the entry upon the bridge not made by a sudden impulse. The testimony indicated that the stringers of the bridge had become very rotten on their bearings, and broke down for that reason.

Upon the argument before us, complaint was made that the township was made liable upon a theory that it was bound to build bridges capable of bearing heavier weights than were fairly to be expected to cross them; that this bridge having been built before the present law was passed requiring townships to keep bridges in repair,[1] no complaint could now be made of its insufficiency for further burdens, and that the question was not fairly presented to the jury.

We held in *Fulton Iron Works v. Kimball*, 52 Mich. 146, that the law of 1879 did not require townships having bridges to change their plan or capacity, or to build bridges for unusual loads. But in the present case there was no dispute in the testimony that the bridge in question was built on a plan adapted to allow loads of the weight in question to cross safely, and that they had crossed repeatedly. The stringers were large and apparently substantial. The

---

[1] Act 244 Session Laws of 1879; How. Stat., Secs. 1442 et al.

court did follow substantially the rules which we have laid down, but we do not think there is any doubt that the township, if keeping its old bridge, was bound to keep it in such repair as was required by a bridge of that kind. The difficulty here was not in the plan and dimensions of the bridge, or of its parts. It was because the timbers had not been kept in good condition.

The only remaining question, therefore, is as to notice of the deficiency. Upon this question, also, the complaint is not based so much on the failure to lay down correct legal principles as to their inapplicability to existing facts.

In this respect, also, the testimony appears to be a good deal stronger than before.

There is some conflict concerning the time within which timbers of the kind used will decay, and some apparent controversy as to what timbers were actually used. That they rotted in fact is not disputed. It appears affirmatively that in June, 1882, some three or four months before this accident, the overseer, Cornelius Rathbun, accompanied by Thomas Beattie and John Connor, made some repairs to the bridge. Some of the planks were removed and replaced, and the north stringer being examined, was thought somewhat defective. It was not removed, but a smaller beech stringer was put in beside it. No examination was made of the rest of the stringers, or of the ends of any of them. The witness Beattie, who upon the former trial fixed the time of a certain conversation about the importance of a new bridge at a later period, said on this trial that it was referred to while these repairs were going on.

We think that it might be argued to the jury upon these facts whether the occasion of making repairs, and the discovery of defects, did not require the overseer to make a more careful examination of the whole bridge. It is evident that if the bearings of the stringers had been examined, their condition would have required them to be removed or repaired ; and it was a legitimate argument that the discovery of rot in one stringer, away from the ends, might suggest its existence at that part of the timber that according

to some witnesses was more exposed to decay. Had no occasion for strengthening any part of the bridge been discovered, the case might be different; but when repairs are going on, caused by suspicious appearances in one part of the timber, the propriety of a fuller examination would naturally occur to a prudent man having the responsibility of keeping it in order. The case was not one where no suspicions had arisen. It was one where the bridge was known to need attention, from wear or from decay; and we do not discover in the instructions given anything to complain of.

We discover no error in those matters on which reliance was had for reversal.

Plaintiff, however, by his counsel, very strenuously insisted on damages for a vexatious and groundless appeal. We do not think the appeal can be so regarded. There was much in the testimony open to criticism, and the defense does not appear to have been without foundation.

The judgment is affirmed.

CHAMPLIN and SHERWOOD, JJ., concurred. MORSE, J., did not sit.