EVERETT T. WOODBURY v. THE CITY OF OWOSSO.[1]

*Municipal corporations—Negligence in not keeping bridge in repair —Evidence.*

| | |
|---|---|
| 64 | 239 |
| 64 | 286 |
| 64 | 239 |
| 69 | 480 |
| 64 | 239 |
| 82 | 465 |
| 64 | 239 |
| 95 | 234 |
| 96 | 552 |
| 64 | 239 |
| 98 | 252 |
| 64 | 239 |
| 104 | 615 |
| 64 | 239 |
| 116 | 504 |
| 64 | 239 |
| 123 | 14 |
| 123 | 30 |

1. In a suit against a city to recover for injuries to plaintiff and to an engine owned by him by reason of the improper construction of a bridge, which the defendant failed to keep in repair, the Court held as follows:

    *a*—It *was* competent for plaintiff to show the shape and thickness of the iron lugs, upon which the ends of the floor joists rested, as the manner in which the bridge was built had much to do with the vigilance required in keeping it in repair.

    *b*—It was *not* competent for plaintiff to show the strength of the bridge to sustain heavy loads at the time of the trial, and after the structure had been changed, its condition three months after the accident being immaterial to the issue.

    *c*—It *was* competent for plaintiff to show that he had work for his engine for many days ahead at time of injury as bearing upon the question of damages.

    *d*—It *was* competent for plaintiff to show the condition of the bridge a few days *before* the accident, and that by reason of loose planks a horse fell through it, it not having been repaired in the interim.

    *e*—While *not* proper to show that the *plan* of the bridge was not the best that could have been adopted, it was competent to show its defective construction, not according to the plan, and that it had been allowed to remain so until it had become dangerous for want of necessary repairs.

    *f*—It was *incompetent* to show in what *manner* the defendant repaired the bridge *after* the injury to plaintiff.

    *g*—The condition of the lugs where the engine went down having been shown, it was competent to show their condition at other parts of the bridge, its *general* condition being involved in the issue.

    *h*—A witness for defendant having stated that he was at the bridge in a few minutes after the accident, and examined the premises thoroughly, finding some of the lugs bent down and some broken, and saw the ends of the joists which had rested thereon, and described their appearance, it was competent for him to give his judgment *how* the accident must have occurred.[2]

---

[1] For second report of this case, see 37 N. W. Rep. 547, where a second judgment for plaintiff was affirmed.

[2] See *Laughlin v. Street Railway Co.*, 62 Mich. 221 (head-notes 3, 4).

*i*—Defendant's request that the jury be instructed that if they found that the bridge was *reasonably* safe and fit for the *ordinary* modes of travel in use at *time* of its construction, the city could not be held liable for any injury occasioned by an *unanticipated* and *extraordinary* use of the same [such as running steam-engines over it by self-propulsion], was correct, except as to the bracketed sentence, which substantially asked for an instruction that the running of the engine over the bridge, as disclosed by the testimony, was at plaintiff's risk, which fact depended upon the *facts* to be found by the jury.

2. It is the duty of a city to exercise, through its officers and agents, *reasonable* and *supervisory* care over its highways and bridges, and see that they are kept in a reasonably safe condition for public travel, and to that end exercise *ordinary* care and diligence; and where such officers or agents have *knowledge* of defects therein, the corporation may become liable for negligence in not making the necessary repairs. Such liability may also arise in the *absence* of such knowledge, a *want* of which may, under given circumstances, *imply* want of due care.

3. The question of want of reasonable care, or negligence, of a city in keeping its highways and bridges in repair, must be determined by the circumstances of each case ; thus, a bridge of long standing requires closer and more frequent examination than a *new* one, while a bridge in a densely-populated community, upon a main thoroughfare, calls for more vigilant supervision than one used only for light or occasional travel.

4. For a proper construction of Act 244, Laws of 1879 (How. Stat. § 1442 et seq.), see opinion, pp. 246–248.

5. In a suit against a city for damages sustained by reason of the defective condition of a bridge which it was its duty to keep in repair under Act 244, Laws of 1879, in order to a recovery, plaintiff must satisfy the jury, by a fair preponderance of evidence, that the injury complained of was caused by the bridge being out of repair through defendant's neglect to keep it in a condition reasonably safe and fit for travel, and that defendant had had reasonable time and opportunity, after such bridge became unsafe for travel, to repair it, and had failed to use reasonable diligence in so doing.

6. In such a case the *negligence* urged against a township or city, and its *liability*, can only arise *after* it had notice of the unsafe condition of the bridge, or where the want of repair or bad condition of the bridge by reasonable diligence could have been discovered, and where it continued for such a length of time that the *want* of knowledge on the part of the city would be regarded as negligence on its part. *Fulton Iron & Engine Works v. Kimball*, 52 Mich. 146.

Error to Shiawassee.  (Newton, J.)  Argued January 6, 1887.  Decided January 13, 1887.

Case.  Defendant brings error.  Reversed.  The facts are stated in the opinion.

*Jerome E. Turner* (*S. F. Smith,* of counsel), for appellant.

*G. R. Lyon,* for plaintiff.

[The opinion discusses the law of the case so exhaustively that a summary of the briefs of counsel is omitted.—RE-PORTER.]

SHERWOOD, J.  The plaintiff in this case brought suit against the city to recover  damages for injuries to his person and property received by falling through a bridge on the twenty-seventh day of September, 1884.

The plaintiff was attempting, at the time, to drive his traction engine over the bridge, which was made of iron, and spanned a mill-race, which crossed Main street, in said city, diagonally.  The bridge gave way, and precipitated the engine into the race, injuring it and the plaintiff, and he now brings this suit to recover the damages sustained, basing his action upon the failure of the city to properly construct the bridge, and thereafter to keep the same in suitable repair.

The cause was tried in the Shiawassee circuit, and the jury rendered a verdict for the plaintiff for the sum of $550 damages, and the defendant brings error.

The bridge in question was built during the year 1878. The race over which it was constructed crosses the street at an angle of about 45 degrees.  The structure was an iron truss-bridge, with four iron beams running parallel with the race, and about 10 feet apart.  The floor was supported upon

64 MICH.—16.

wooden joists two and a half or three inches thick, and eight inches wide. The ends of the joists rested upon iron lugs, fastened to the sides of the beams, which were about a quarter of an inch thick, extending out three inches from the beam. They were four inches wide, and placed about fifteen inches apart.

The plaintiff does not complain of any defect in the plan of the bridge; neither does he claim that, if it had been properly constructed and kept in repair, it would have been dangerous; but, by reason of the improper construction, it more easily got out of repair, and that the city authorities should have used more vigilance, for that reason, in looking after its safety.

It was the theory of the plaintiff upon the trial that the joists had been allowed to move, from the constant jolting produced by the passage of heavily loaded vehicles over the bridge; that it so misplaced the ends of the joists upon the lugs that they were easily thrown off by the great pressure of the plaintiff's engine when it came upon the planks; and that ordinary care required the city authorities to have fastened the joists in such manner that they could not have been thrown off the lugs by any load weighing no more than the plaintiff's engine. Upon this theory the plaintiff's testimony was offered.

No question was made but that the bridge was built by the city, and that it was its duty to keep the same in a reasonably safe condition for public travel; neither was it contended that, when said bridge is in good repair, it is not sufficiently strong to sustain the weight of the plaintiff's engine. It is not claimed, either, that plaintiff did not use due care in driving the engine upon the bridge when the accident occurred. The bridge was about 22 feet wide, and 50 feet long. When the accident occurred, the plaintiff had driven his engine upon the east end of the bridge, and was near the west end, and a little north of the center.

Twelve errors are assigned to the rulings of the court in receiving and one in rejecting testimony. We shall consider only those assignments which were brought to our attention upon the argument.

The first assignment relates to testimony showing the shape and thickness of the lugs, and was competent. The manner in which the bridge was built had much to do with the vigilance required in keeping it in repair.

The second assignment related exclusively to the strength of the bridge to sustain heavy loads at the time of the trial, and after the structure had been changed. This testimony was erroneously admitted. It was prejudicial to the defense. It was clearly immaterial what the condition of the bridge was three months after the accident occurred.

The fourth complaint is that the plaintiff was permitted to show that he had work for the engine to perform for many days ahead when the injury to it and himself took place. We see nothing incompetent in this. It was proper for the consideration of the jury upon the question of damages.

The sixth assignment relates to the condition of the bridge but a few days before the accident, when another person driving over it found the planks loose, by reason of which his horse fell through the bridge. This testimony was competent, as the bridge was not repaired before the accident occurred to the plaintiff.

The proof presented to show that the joists were not put on the bridge in a proper manner is complained of in the seventh assignment of error. We think this evidence was competent. While it was not competent to show that the plan of the bridge was not the best, or as good, perhaps, as it might have been, it was proper to show that the bridge had been defectively constructed, not according to the plan, and had been allowed to remain so until it had actually become dangerous by neglecting the necessary repairs.

It was not competent to show in what manner the defend-

ant repaired the bridge after the injury to the plaintiff oc-
curred, and it was error to admit testimony for that purpose.
This disposes of the eighth assignment.

After evidence had been offered showing the condition of
the lugs where the engine went down, a witness was asked:

" How were they on the other parts of the bridge,—the other
lugs? Were any of them bent?"

We think this was proper. The general condition of the
bridge at the time was involved in the issue, and the ninth
assignment of error cannot be sustained. Neither can the
eleventh and twelfth. They both relate to the manner of
the construction, or rather the placing, of the joists. What
we have already said disposes of both these assignments.

Witness James H. Calkins was sworn on the part of
defendant, and, among others, was asked the following
question:

"I wish you would tell the jury, in your judgment, how
that engine must have gone down,—by what reason?"

Before this question was asked, the witness had stated that
he was at the bridge in a few minutes after the engine went
down, and examined the premises thoroughly; saw the lugs,.
and found several of them bent down and some of them
broken; saw the ends of the joists that had laid upon the lugs,
and described their appearance. His testimony shows that he
was possessed of more than ordinary knowledge and skill in.
such matters, and the plaintiff's case rested largely upon the-
ory, and to that extent we think the testimony was compe-
tent. It may or may not have been rebutting. If not, it cer-
tainly could not have harmed the plaintiff. It should have
been admitted.

Ten exceptions are taken to as many different portions of
the charge and refusals to charge.

The court refused to give the defendant's first request,.
which is as follows:

"If the jury find that the bridge in question was reasonably safe and fit for ordinary travel,—for the ordinary modes of travel in use at the time of its construction,—the city cannot be held liable for any injury occasioned by an unanticipated and extraordinary use of the same; such as running steam-engines over it by self-propulsion."

The last sentence of this request goes too far. It substantially says the running of the plaintiff's steam-engine over the bridge in the manner he did was at his own peril. Whether this was so or not depended upon the facts to be found by the jury, and which could not be passed upon by the court; otherwise the instruction would have been correct.

The remaining exceptions are to the charge as given, which, upon the important points in the case, is as follows:

"A municipality, like the city of Owosso, must know what is going on and must act through its officers and agents, and through them it may know of the existence of a defect in a highway or a bridge. And when such knowledge is gained by its officers or agents, the corporation may become liable for negligence in not making repairs where repairs are needed. On the other hand. though they may not have notice and knowledge, a defect may exist and be unknown, and the corporation still be liable on the ground that the prime fault consists in being ignorant of the existence of the defect; for a want of knowledge may, under given circumstances, imply want of due care. The duty of a city is to exercise, through its officers and its agents acting for it, a reasonable and supervisory care over its highways and its bridges, and, within reasonable limits, be watchful of their condition and safety, and to see that they are kept in a reasonably safe condition for public travel. A corporation is not bound to extraordinary care or extraordinary diligence, but only an ordinary care and ordinary diligence. It is not an insurer of safety. It does not warrant or undertake against accidents and injuries. It only undertakes that the bridge which is to be crossed is reasonably or ordinarily safe for public travel.

"This question of want of reasonable care, or negligence, must be determined by the circumstances of each case. What circumstances would be considered a want of ordinary care when applied to one bridge in one locality would not be

so considered in the case of another bridge in a different locality.' A bridge of long standing would require closer and more frequent examination than a new bridge. A bridge in a densely-populated community, upon a main thoroughfare, with daily heavy travel, would require more vigilance in its supervision and care than would a like bridge in a thinly-settled part of a township, or in a city with only a light or occasional travel. A difference, also, in the material out of which the bridge is constructed, or on which rests the flooring of the bridge,—whether the timbers used were suitable or otherwise, were of full length or shorter than they should be,—and the permanency of the construction, would all have to be considered by the jury in determining the question of ordinary care, or want of ordinary care.

" I charge you that if you find that the bridge was defectively maintained, in the manner mentioned, and on that account the injury occurred, and the plaintiff was without fault on his part, and the jury find further that this defect in the bridge had remained and been in the condition complained of such a length of time that defendant should have known of it, then the plaintiff is entitled to recover. If you find the defects complained of,—that is to say, the liability of the planks and joists to move and drop off their supports by the jolting of passing teams and loads,—and this rendered the bridge unsafe for travel, and might have been discovered by an examination of the position of the planks and joists, then the city could not refuse to see what others could see, and they would be chargeable with negligence for not knowing these facts; and, if the plaintiff was injured without fault on his part, he ought to recover. [*Stebbins v. Keene,* 60 Mich. 214; *Medina v. Perkins,* 48 Id. 67.]

" If the jury find that the bridge in question was not in good repair and in a condition reasonably safe for public travel at the time of the accident, on which account the injury occurred, and the plaintiff was not in fault in going or driving his engine upon it, and the defendant ought to have known of the unsafe condition of the bridge, then the plaintiff would be entitled to recover just damages.

" Before the passage of Act 244, Laws of 1879, there was no legal duty requiring a township, city, or village to keep in repair its highways and bridges, and no action could be maintained for an injury suffered by reason of a defect in such bridge or highway; but by the act of 1879 a duty was created on their part to maintain in a reasonably safe condition their highways and their bridges. But this act does not

impose the duty to build new bridges, nor bridges of any kind. A municipal corporation is vested with certain legislative powers confined to the territorial limits of the city or corporation; and, when it has acted in determining the kind of bridge it will construct, the wisdom or correctness of such legislative determination cannot be considered or become a subject of review by a court or jury.[1] Such determination is final. I therefore charge you, in this case, that the plaintiff cannot recover in this case upon the ground that the plan or method of constructing the bridge was not as good and durable as some other method or plan may have been.[2] [*Lansing v. Toolan*, 37 Mich. 152; *Toolan v. Lansing*, 38 Id. 315; *McCutcheon v. Homer*, 43 Id. 486; *Detroit v. Beckman*, 34 Id. 125; *Burford v. Grand Rapids*, 53 Id. 98.]

"The bridge was built in 1878, when the municipality owed no duty to the public or individuals to build bridges, and its action cannot be reviewed in this action. But the act of 1879 made it the duty of townships, villages, cities, and corporations to keep in good repair, so that they will be safe and convenient for public travel at all times, all public highways, streets, bridges, cross-walks, and culverts that are within their jurisdiction, and under their care and control, and which are open to public travel. But the statute also provides that, when an action is brought under this act, it must be shown that such township, village, city, or corporation has had reasonable time and opportunity, after such highway, street, cross-walk, or culvert became unsafe or unfit for travel, to put the same in a proper condition for use, and has not used reasonable diligence therein. That is the language of the statute which creates the duty and gives the right of action to the party injured, and this proviso is as important as any part of the act.

"Before the plaintiff can recover in this case, gentlemen, you must be satisfied, by a preponderance of evidence,—

"1. That the plaintiff has sustained an injury.

"2. That the injury was caused by the bridge being out of repair by reason of the defendant's neglect to keep such bridge in good repair, and in a condition reasonably safe and fit for travel; and, also, that a reasonable time and opportunity, after such bridge became out of order and unsafe and unfit for travel, if you find it out of repair, had elapsed and expired, and that the defendant did not use reasonable diligence to repair and put the same in proper condition.

---

[1] See *Davis v. Jackson*, 61 Mich. 538.
[2] See *Stebbins v. Keene*, 60 Mich. 217.

"This negligence urged against a township or city, and its liability, can only arise after it has had notice of the unsafe condition of the bridge, or where the want of repair or bad condition of the bridge by reasonable diligence could have been discovered, and where it continued for such a length of time that the want of knowledge on the part of the city would be regarded as negligence on its part." [*Fulton Iron & Engine Works v. Kimball,* 52 Mich. 146.]

We find no error in that portion of the charge last quoted, and which contains the clauses excepted to in the remaining assignments. Indeed, we think the law of 1879, as expounded by the learned circuit judge, is peculiarly applicable to the facts in this case and unexceptionable, and renders further discussion by us unnecessary.[1] But for the minor errors noticed, which might possibly have been prejudicial to the defendant, the judgment will be reversed, and a new trial granted.

The other Justices concurred.

---

[1] See *Carver v. Detroit & Saline Plank Road Co.*, 61 Mich. 585 (head-note 4).