## MOORE *v.* TOWNSHIP OF HAZELTON.

1. BRIDGES—DEFECTS—NOTICE TO TOWNSHIP.
   Notice to the contractor of a township bridge that it is being built of defective material is not notice to the township.

2. SAME—LAPSE OF SUFFICIENT TIME TO REPAIR — PRESUMPTIONS.
   One may properly presume, in the absence of any knowledge or indication to the contrary, that a township has repaired a weak and shaky bridge after the lapse of a year from the time that it was known to be in that condition.

3. SAME — KNOWLEDGE OF CONTINUING DEFECT — CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
   The question whether a thresher, who sustained damages by reason of such a bridge, had such knowledge, or opportunity of knowing, of the continuance of the defect as would render him guilty of contributory negligence in driving his machine upon the bridge, was for the jury, under proper instructions.

4. SAME—WITNESSES—CROSS-EXAMINATION.
   In an action against a township for damages caused by the giving way of a bridge under a threshing outfit, the plaintiff, who had knowledge the year before the accident that the bridge was weak and shaky, was properly asked on cross-examination whether he did not think it was an act of carelessness to attempt to cross the bridge without first examining it to see whether, in his judgment, it was strong enough to sustain the weight of the machinery.

5. SAME—DUTY OF TOWNSHIP.
   While townships must construct bridges sufficiently strong to meet the ordinary requirements of travel in the community, they are not obliged to provide structures that will sustain loads that could not reasonably be anticipated.

6. SAME—THRESHING OUTFITS.
   Whether a ten-horse traction engine and tank full of water was such a load was a proper question for the jury.

Error to Shiawassee; Smith, J.   Submitted October 4, 1898.   Decided November 1, 1898.

Case by Nathan Moore and James Moore against the township of Hazelton for damages caused by a defective bridge. From a judgment for plaintiffs, defendant brings error. Reversed.

*A. L. Chandler* (*George R. Gold*, of counsel), for appellant.

*Watson & Chapman*, for appellees.

HOOKER, J. The plaintiffs recovered a judgment for damages resulting from an injury to a steam threshing machine outfit, occasioned by the fall of a bridge upon which it was crossing a stream. It was claimed that the bridge was out of repair and unsafe, and that the timbers were rotten. The jury must have found that the load placed upon the bridge by the plaintiffs was not extraordinary for that vicinity, and that the township had actual or constructive notice of the weakness of the bridge, and was negligent in permitting it to go unrepaired. The contract for building the bridge was let some years before to one Austin, who hired a man named Garner to work upon it. Garner testified that in boring a hole through a timber—which there was evidence tending to show to have been the piece used for the needle beam, which is alleged to have given way—the bit stopped drawing, and he then turned it, and bored from the other way, when he met the same difficulty; that it was owing to a condition of dry rot; that he informed Austin of it, who said the timber should be put in; and a bolt was obtained, and driven through the stick where the auger failed to do its work, and the stick was used in the bridge. He also testified to another conversation upon the subject at the supper table, in the presence of his brother's wife. Mrs. Garner was called by the plaintiff, and she testified that on the latter occasion the following occurred:

"I remember of a talk between George Garner and Mr. Austin about a stick of timber they put in the bridge. It was at the supper table one night. They came home to

supper, and during the eating of the supper George says to Mr. Austin, he says: 'Andrew,' he called him, 'it is a shame to put that stick of timber into that bridge, for,' he says, 'it is rotten.' Mr. Austin says, 'Never mind, I will risk but what I will get it accepted;' and that was the conversation exactly.

"*Mr. Chandler:* I move to strike out this testimony as being incompetent and immaterial, and in no way binding the township.

"*The Court:* What position did Mr. Austin occupy at that time?

"*Mr. Chapman:* He had taken the contract from the township to build this bridge. They had let it to him.

"*The Court:* As an admission it would not bind the township, but as a matter of notice it would. I will let it stand.

"*Mr. Richards:* What the contractor may do or say would not bind the town.

"*The Court:* If Mr. Austin was there, having charge of the work on the defendant's highway,—having charge of public work,—I think there would be a presumption there that he was helping, and doing it in the interest of the defendant. Now, the fact that such a person, in such a position, had notice of what was being done, would be competent for the purpose of showing notice only, but not as any admission by the township. I will deny the motion. (Exception for defendant.)

"*Cross-examination by Mr. Chandler:* I don't remember anything more that was said there about the bridge at that time. I was there all the time during the supper hour.

"*The Court:* I think, gentlemen, that the fact that Mr. Austin was informed of the condition of the timber might stand, but as to what Mr. Austin said about it may be stricken out of this witness' testimony.

"*Mr. Chandler:* I move to strike it out,—all of it.

"*The Court:* I will strike out what Austin said about it, but let the fact stand that Austin was notified in regard to that stick of timber. (Exception for defendant.)"

Austin was not an officer of the town at that time, that we discover, but merely one who had contracted to build the bridge; and we think that notice to him that the bridge was not properly built would not be notice to the town that the bridge was weak, nor would this conversa-

tion between Austin and Garner at the supper table be proper evidence to prove that it was so.

Among other questions in the case was that of contributory negligence. There was some evidence tending to show that, a year before, the plaintiffs knew that the bridge was weak and shaky, and that one of the stringers was out of place, and that one of them took an ax, and drove it into position, before going upon the bridge. The defendant's counsel offered the following request:

"If you find the plaintiffs crossed this bridge, with the engine, the year before the alleged accident, and that the bridge at that time shook and gave evidence of weakness, and if such shaky and weakened condition of the bridge was then known to the plaintiffs, or either of them, in the absence of actual knowledge by them that the bridge had been subsequently repaired, they would have no right to presume that it had been repaired, and it would be negligence for the plaintiffs to draw their engine on said bridge without first inspecting its condition; and, if they drove the engine on the bridge without inspecting it, they placed themselves in a place of danger,—they took their chances on getting safely over the bridge,—and, if they were injured in so doing, they cannot recover in this case."

The judge refused this request, and instructed the jury as follows:

" ' If the bridge had been out of repair the year before, and the plaintiffs did know it, they would have a right to presume that the township had put the bridge in a reasonable repair before the following year.' *   *   *

" 'If plaintiffs, or either of them, had actual knowledge, or if they, or either of them, were in possession of such facts or matters or circumstances or information concerning the condition of this bridge at the time of the alleged injury as would put reasonable, careful, and prudent men upon inquiry as to whether this bridge was out of repair, and not in a condition reasonably safe for them to drive their engine upon, it would be negligence for them to drive their engine upon the bridge without first making careful examination for the purpose of determining whether said bridge, at the time of the alleged injury, was safe for them to drive their engine upon.'

"The fifth I give with some interlineation: 'If the plain-

tiffs, or either of them, knew, or if they were in possession of such facts relative to the condition of this bridge at the time of the alleged injury as would put reasonable, careful, and prudent men upon inquiry as to the strength and safety of this bridge, and its condition of repair, it would, under such circumstances, be negligence of the plaintiffs to attempt to drive their engine upon and over the bridge (I have added the words, "without inspecting it"); and if, under such circumstances, they did drive the engine upon the bridge, and their engine was broken and damaged by the breaking down of the bridge and the falling of the engine into the creek, the plaintiffs cannot recover in this case, and your verdict must be for the defendant, "No cause of action." '

"The sixth: 'I instruct you that, although you may believe from the evidence that the defendant township had negligently suffered this bridge to be and remain in an unsafe condition for driving traction engines upon and over it, still, if you also believe from the evidence that such unsafe condition of the bridge was known to the plaintiffs, or either of them, before and at the time they attempted to drive their engine upon and over the bridge, and if, knowing that said bridge was unsafe and out of repair, they attempted to drive their engine upon and over said bridge (I will add, "and did drive it upon the bridge"), they would not be using due care and prudence to avoid an injury, which the law in this State requires, but plaintiffs would, in such case, be guilty of (I have added the word "contributory") negligence; and, if you so find the facts to be, you must find a verdict for the defendant, "No cause of action." ' "

Taken together, we think the instructions fair. The latter sentences qualified the instruction that the plaintiffs had a right to presume that the bridge had been repaired, if such qualification was necessary. We think that, in the absence of any knowledge upon the subject, or anything apparent to observation that should lead to a contrary opinion, it may be presumed that a township has repaired a weak and shaky bridge after the lapse of a year from the time that it was known to be in that condition; but it was eminently proper to submit to the jury the question of the plaintiffs' knowledge, and opportunities for knowing, that it had not been repaired. We think no

error was committed in refusing defendant's request, or in the instructions given.

On cross-examination one of the plaintiffs was asked the following:

"*Q.* Do you say in your judgment it was not carelessness to drive a load of that dimension on that bridge without first examining the strength of it, to see whether it would hold or not, in your judgment? (Objected to, as witness had a right to assume the bridge was strong enough to run an ordinary threshing engine over it in that manner.)

"*The Court:* I think that is a matter of law. (Exception for defendant.)"

This was a proper question to ask the plaintiff on cross-examination.

A witness for the defendant was asked whether, in his opinion, a ten-horse engine, with a tank full of water attached, was an extraordinary load in that vicinity, and his answer was excluded. Unless we are to say that townships must construct bridges suitable to sustain the weight of any load that may be put upon them, we must say that they must provide only for the ordinary wants of travel in such communities. We recognize the right to use traction engines upon the highways, and the necessity for townships to keep abreast of the improvements of the age, and the necessity for better and stronger bridges now than in earlier times. The obligation is, however, to provide reasonably safe bridges under existing conditions, and they are not liable for a failure to provide structures that will sustain loads that could not reasonably be anticipated. Whether a ten-horse engine and tank full of water constituted such a load was a question of fact, and it was proper to take testimony upon the subject. The plaintiffs were allowed to testify that other engines as large or larger frequented the highways of the township, and the defendant should have been allowed to introduce testimony to the contrary.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.