JOHN ANDERSON and Others v. CITY OF ST. CLOUD.

February 5, 1900.

Nos. 11,929—(214).

**Municipal Corporation—Strength of Bridge.**

In maintaining a bridge for public use, a municipality is not limited in its duty by the ordinary business use of the structure, but is required to provide for what may be fairly anticipated for the proper accommodation of the public at large in the various occupations which, from time to time, may be pursued in the locality where it is situated.

**Same—Question for Jury.**

After the construction of the bridge, the question whether it has been maintained in a suitable condition for public use is ordinarily, and in this case was, a question for the determination of a jury upon the evidence.

**Evidence—Contributory Negligence.**

The evidence in this case considered, and *held* to disclose such an obvious want of care on the part of the parties who sustained the injury in the use of the bridge, whereby they suffered their loss, that they cannot recover.

Action in the district court for Stearns county to recover $840, damages for injuries to a block of granite and a wagon caused by a defective bridge. The case was tried before Searle, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiffs appealed. Affirmed.

*Calhoun & Bennett*, for appellants.

Defendant having built a bridge designed to carry a load of 15 tons, using only 25 per cent. of its real strength, was bound to keep it in such repair as to accommodate travel of that kind;—at least to accommodate such use as might probably be made of it, and cannot escape liability by showing that the load was larger than the usual loads hauled across it. Having built a bridge of that character, it amounted to an invitation to the public to use it as a 15-ton bridge. Where a bridge is originally built strong enough to support a designated weight, it must not be weakened so as to destroy its capacity to carry such a load by changes or repairs. Fulton v. Township, 52 Mich. 146; Sewell v. City, 75 N. Y. 45; Gregory v. Inhabitants, 80 Mass. 242; Stebbins v. Township, 60 Mich. 214; Yordy v. Marshall, 80 Iowa, 405; McCormick v. Township, 112 Pa. St. 185, 196; Bonebrake v. Board, 141 Ind. 62; City v. Carver (Ind.) 26 N. E. 42. Plaintiffs were not, as matter of law, guilty of contributory negligence. Apple v. Board, 127 Ind. 553; Board v. Creviston, 133 Ind. 39; Fisher v. Village, 133 N. Y. 527; Board v. Legg, 110 Ind. 479; Walker v. Decatur, 67 Iowa, 307.

*George W. Stewart*, for respondent.

At common law no obligation rests on municipalities to keep bridges in repair. Such obligation exists only by virtue of legislative enactment. No such liability is imposed on defendant. Sp. Laws 1889, c. 6, § 1. The city owed the public no duty except to keep this bridge in condition to accommodate ordinary traffic, and such as the city might reasonably foresee would pass over it. Wilson v. Town, 47 Conn. 59; Gregory v. Inhabitants, 80 Mass. 242; Board v. Creviston, 133 Ind. 39; Yordy v. Marshall, 80 Iowa, 405; Moore v. Township, 118 Mich. 425, 76 N. W. 977. The foregoing are all cases in which it was held that the question as to

whether the load was unusual or extraordinary was for the jury. In the following cases it was determined as a matter of law by the court: McCormick v. Township, 112 Pa. St. 185; Clulow v. McClelland, 151 Pa. St. 583; Board v. Chipps, 131 Ind. 56; City v. Carver (Ind.) 26 N. E. 42. Plaintiffs were guilty of contributory negligence. City v. Carver, supra. Plaintiffs assumed the risk of injury from hauling this load over the bridge.

LOVELY, J.

Plaintiffs had occasion to move a large granite block, weighing about nine tons, from their quarry, near the city of St. Cloud, to the Northern Pacific depot on the opposite side of the river. The city had built a steel truss bridge across the river two years before, with an estimated power, at the time, of sustaining burdens of 15 tons weight. This structure connected the two opposite river termini of St. Germain street, one of the public thoroughfares of the city, in a continuous way for travel; was generally used; and under its charter the municipality were required to and assumed the duty of maintaining it in a suitable condition for use by pedestrians, teams, and an electric street-car line. The bridge was 680-odd feet in length, had a 24-feet roadway between the sidewalks, and the north portion was occupied by the tracks of the street-car company, leaving a sufficient space, however, for carriages and teams to pass each other in the clear, and there was nothing to prevent the use of the portion on which the car tracks were situated for the same purpose, if occasion required. At the time in question the flooring of the bridge, which was of wood, had become worn down by use from its original thickness of four inches to an inch and three-quarters, and was water-soaked on top, though perfectly sound for an inch and a quarter below the surface. Notice of this condition had been conveyed to the city, and it does not appear that any repairs had been made since the bridge was built.

There was also a wagon bridge over the river at another point in the city, as well as a railroad bridge of the Great Northern Company, on which plaintiffs could have transferred their granite block to the depot of the Northern Pacific Company by payment of switching charges, but the persons to whom it had been sold

desired to have it delivered at the depot of the latter company by team, and the plaintiffs placed it upon a heavy truck, and with several teams of horses undertook to haul it over the wagon way of the St. Germain Street bridge. When they reached a point one-third of the way from the opposite side, the wheels on one side of the truck broke through the plank flooring, the stone slipped from its place, and fell upon the river bank below, considerably damaging the bridge, and practically ruining the stone, for which injury plaintiffs seek in this action to recover compensation from the city for alleged neglect to maintain a reasonably safe highway for their use, in the manner adopted by them.

At the trial, upon the conclusion of the evidence, the court ordered a verdict in favor of defendant. Plaintiffs moved for a new trial, which was denied, and now by appeal from that order bring the whole record into this court for review.

On the trial it was stipulated by the parties

"That the load in question was a larger and heavier load than the usual and ordinary loads that were hauled across the bridge,"

And it is very earnestly urged by defendant's counsel on this appeal that this concession of itself precluded a submission of the question to the jury upon the duty of the city to maintain a reasonably safe bridge. To this view we cannot assent. The stipulation, so far as the plaintiffs are concerned, only admits that the load was larger and heavier than the ordinary loads hauled across the bridge, so that if defendant's claim in this respect is sound, it would, at least within its original strength capacity, become at the trial a mere method of mathematical estimation of the weight of loads which had been previously hauled over the structure, above the weight of which no one could trust it without peril, or be under legal protection. This is not the rule supported either by reason or authority. The true rule of duty resting upon public authorities in such cases has been held by the supreme court of Massachusetts to be to maintain them

"In such condition that, having in view the common and ordinary occasions for their use, and what may fairly be required for the

proper accommodation of the public at large in the various occupations which may from time to time be pursued, each particular way shall be so wrought, prepared and maintained that it may justly be considered, for all the uses and purposes for which it was laid out and designed, to be reasonably safe and convenient." Gregory v. Inhabitants, 14 Gray, 242, 246.

In this abstract statement of the rule of duty we concur, and within the original strength capacity of the structure the city was required to maintain the bridge in question in a reasonably safe condition, not only for that traffic for which it had been used, but also for such uses as it might reasonably anticipate it would be used by the "public at large in the various occupations which may from time to time be pursued" by those having lawful occasion to use it; and it necessarily follows from this rule that it is not a question of law, depending entirely upon the past use of the structure, but an issue for a jury to determine, whether the bridge, upon evidence showing its age, use, structural conditions, strength, or weakness of its different parts, the business uses of the surrounding locality, as well as the previous use made of the same, has been lawfully maintained in any particular case. The rule requiring a submission to a jury of the issue upon the duty of the city to the public in such a case as this is fairly inferable from the best authorities cited by both parties on this appeal. Gregory v. Inhabitants, supra; Wilson v. Town, 47 Conn. 59; Moore v. Township, 118 Mich. 425, 76 N. W. 977; Board v. Creviston, 133 Ind. 39, 32 N. E. 735; Yordy v. Marshall, 80 Iowa, 405, 45 N. W. 1042; Fulton v. Township, 52 Mich. 146, 17 N. W. 733; Sewell v. City, 75 N. Y. 45; Stebbins v. Township, 60 Mich. 214, 26 N. W. 885; McCormick v. Township, 112 Pa. St. 185, 196, 4 Atl. 164.

But the order of the court below directing a verdict was right, and must be sustained, for the reason that it clearly appears upon the whole evidence that plaintiffs displayed such a want of the ordinary care required under the circumstances of this case as to justly preclude them from recovery against the city; and, as we view the evidence, it would have been the duty of the trial court as a matter of law to have set aside any verdict that might have been rendered in their favor, upon the ground that their misfor-

tune was the result of their own negligence and not directly chargeable to any lack of duty by the city.

We need only summarize a portion of the undisputed facts which force this conclusion upon us. It is apparent that, to careful observation, the flooring of the bridge was worn too thin (less than half its original thickness) to sustain the heavy load in question, while the stone was two-thirds in weight of the original strength capacity of the structure, and the danger of using the bridge for hauling such a heavy load over it was brought directly to the attention of plaintiffs, who investigated its capacity in that respect before using it, and, under such circumstances, should be charged with the full knowledge of what their examination would disclose at the time when they drove their teams upon it. After going upon the bridge, their teamsters had proceeded only 25 feet when the planking commenced to crack or break under the burden. Without turning to the other side, where the flooring was stronger, or attempting to withdraw the load, which seems possible, the teamsters "kept right on," as their witness puts it, for over 400 feet, the flooring in the meantime cracking, and as one witness, who is uncontradicted, says, breaking through, until one-third only of the bridge remained to be traversed, when the catastrophe, which seemingly ought to have been expected, occurred.

Under the facts above stated, which are not denied, it would seem that the appellants should, when their suspicions were aroused regarding the strength of the bridge, and they made inquiries to satisfy themselves whether it was safe, be held at least to knowledge of the results which a reasonable examination would have shown, viz., that the same was unsafe (City v. Carver [Ind. Sup.] 26 N. E. 42); and that their temerity in keeping "right on" after the flooring commenced to crack and break, without an effort either to turn to the stronger and safer portion of the bridge or to withdraw their load, committed them to an experiment in which they took chances that were decidedly against them. Under these circumstances we cannot hold that the city is legally responsible for the result, which might have been obviously expected and avoided by reasonable care.

The direction to find for the defendant city was therefore justified upon the whole evidence, and the order appealed from is affirmed.