FREDERICK C. WAKEHAM, BY HIS NEXT FRIEND, v. THE TOWNSHIP OF ST. CLAIR.

*Highways—Neglect to repair—Contributory negligence— Latent defects.*

Plaintiff sued for injuries sustained by being thrown from his horse while riding along a highway bordering on a river, and into which a creek emptied near the place of the accident. For a distance of from 30 to 40 rods on either side of the

| 91 | 15 |
| 109 | 314 |

| 91 | 15 |
| 114 | 453 |

| 91 | 15 |
| 123 | 26 |
| 123 | 416 |

| 91 | 15 |
| s51NW | 696 |
| e131 | 280 |

| 91 | 15 |
| s51NW | 696 |
| 133 | 151 |

| 91 | 15 |
| 137 | 322 |

creek the road-way had been built up with logs and earth, to protect which a breakwater had been erected, from 2 to 3 feet high and from 60 to 80 rods long, by laying a line of logs parallel with the river, and piling slabs and edgings transversely thereon to the height of the road-bed. The slabs were 4 feet long, and the space between them and the road-bed was filled with earth, which extended about half way over the slabs. A bridge about 16 feet wide spanned the creek. During the fall of the year in which the accident occurred the water in the river was unusually high, and the filling at the inner end of the slabs had become undermined in places, and holes from 6 to 8 inches in diameter had appeared, from time to time, on the inside line between the old highway and the edgings. At the time plaintiff was injured two holes existed, —one at the bridge, which was 2 feet across, and in which a rail had been placed as a warning of danger, and the other, at a point 20 to 30 feet north of the bridge, which was left open and unguarded, and had been for some time. Near these holes there was a mud-hole in the highway, which was narrow at this point. The main question of fact in issue on the trial was the place of the accident, plaintiff contending that his horse turned to avoid the mud-hole, and stepped into one of the existing holes, while defendant claimed that the testimony showed that the horse broke through at a point 5 or 6 rods north of the bridge, where the road was apparently solid, and that there were no surface indications that a hole was being eaten away underneath by the water, and that the township officers had no notice or knowledge of such fact. In reversing a judgment in favor of the plaintiff for $4,500, the Court held that—

*a*—It is not unusual for persons to deviate from the beaten track upon a highway, between which, and the way intended for travel, there is a distinction; and, in the cases which hold that a person who deviates from the traveled way assumes the risk, the way intended for travel was forsaken.

*b*—If the accident happened by reason of plaintiff's horse stepping into the unguarded hole, and it was so near the traveled way, or way intended for travel, that persons would be likely to get into it in seeking to avoid the mud-hole, the defendant was guilty of negligence in allowing it to remain there for an unreasonable time; but, if the hole was so open and notorious that a person using ordinary care would have observed and avoided it, plaintiff was guilty of negligence in riding into it, which questions were for the jury, under the testimony as to the condition of the road at this point, and the state of the weather at the time.

*c*—If the accident occurred at the point 5 or 6 rods north of the bridge, and the injury was occasioned by the horse breaking through what, upon the surface, appeared to be solid earth, and there was nothing upon the surface of the road at that point to give notice or knowledge that a hole was being eaten away underneath by the water, defendant is not chargeable with negligence.

Error to St. Clair. (Canfield, J.) Argued March 2, 1892. Decided March 18, 1892.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Avery Bros.*, for appellant.

*Atkinson, Vance & Wolcott*, for plaintiff, contended:

1. It is not error to refuse to submit, nor for the jury to fail to answer, a request for special findings which, under the circumstances of the case, would not be controlling, or, in other words, would not justify the court in setting aside a general verdict; citing *Johnson v. Insurance Co.*, 39 Mich. 33; *Swift v. Plessner*, Id. 178, 181; *Tobacco Co. v. Jenison*, 48 Id. 459, 463; *Power v. Harlow*, 57 Id. 107, 118.

2. From the record it plainly appears:

   *a*—That the edgings were covered with from 4 to 6 inches of dirt, and on a level with the rest of the raised highway, and to all appearances safe and intended for public travel.

   *b*—That there was no guard-rail or other signal or warning that it was unsafe to travel east of the mud-hole, and along by these edgings, where it was so graded and apparently intended for travel.

   *c*—That there was travel on the east as well as on the west side of the big mud-hole at the time of the accident, and that there was more room and apparently safer traveling on the east side.

   *d*—That the hole where the plaintiff was injured was from 3 to 6 feet east of the big mud-hole.

   *e*—That the plaintiff had not been over this road for about three years before the accident, and then only twice, and that he was riding in a snow-storm, with the wind blowing in his face, about 5 o'clock in the evening, when injured.

   *f*—That the officers of the township had full knowledge of

91 Mich—2.

the dangerous condition of the road, which was so negligently and defectively constructed as to make it unsafe at all times.

It is contended that, under the above facts, the plaintiff would have been entitled to recover, even though the special questions had been answered in defendant's favor, namely:

a—Was the plaintiff, when hurt, passing with his horse, without necessity therefor, outside of the course usually traveled?

b—Was there a beaten track at this point usually traveled, and apparent to ordinary observation?

c—Was such regular beaten track safe?

If the township so constructed this road that the part where the plaintiff was hurt was to all appearances safe and intended for public travel, the plaintiff would not be negligent in going where he was thus riding, and the defendant cannot insist that he was negligent in passing on that portion of the road where its conduct had invited him; citing Bish. Non-Cont. Law, § 975; *Treise v. St. Paul*, 36 Minn. 526; *Lindholm v. St. Paul*, 19 Id. 245; *Brezee v. Powers*, 80 Mich. 176, 177; *Kinney v. Folkerts*, 78 Id. 695, 84 Id. 619; *Sebert v. Alpena*, 78 Id. 165; *Langworthy v. Green Township*, 88 Id. 207; *Morrissey v. Ferry Co.*, 47 Mo. 523, 524; *Cobb v. Standish*, 14 Me. 198; *Hall v. Unity*, 57 Id. 529.

3. Special questions should never be submitted in negligence cases, which require the jury to find what the plaintiff did or omitted to do, when there are theories on which a recovery may be had not covered by the question. The jury might be satisfied from all of the evidence that the plaintiff was not guilty of negligence, and, if so, he would be entitled to a verdict; citing *Peer v. Ryan*, 54 Mich. 224; *Johnson v. Insurance Co.*, 39 Id. 33, 36.

4. Defendant's counsel treat the question of deviation as one of law, rather than as a mixed question of law and fact, but the authorities they cite do not support their position, namely: *Rice v. Montpelier*, 19 Vt. 470; *Sykes v. Pawlet Township*, 43 Id. 446; *Chapman v. Cook*, 10 R. I. 304; *Scranton v. Hill*, 102 Penn. St. 378; *Brown v. Glasgow*, 57 Mo. 156; *Farrell v. Oldtown*, 69 Me. 72; *Marshall v. Ipswich*, 110 Mass. 522; *Keyes v. Marcellus*, 50 Mich. 441; *Abernethy v. Van Buren Township*, 52 Id. 385; *Beall v. Athens Township*, 81 Id. 536; and the following cases will be found more in point: *Green v. Danby Township*, 12 Vt. 338; *Goldsworthy v. Linden Township*, 75 Wis. 24; *Matthews v. Baraboo Township*, 39 Id. 674; *Kelley v. Fond du Lac Township*, 31 Id. 176, 186; *Wall v. Highland Township*, 72 Id. 435; *Aurora v. Colshire*, 55 Ind. 484.

5. Townships are liable for defective construction of a highway; citing *Carver v. Plank-Road Co.*, 61 Mich. 590; *Sebert v. Alpena*, 78 Id. 167; and the nature of the construction determines the amount of care necessary to keep the highway in repair; citing *Woodbury v Owosso*, 64 Mich. 246; and they are bound, when they construct a road, to make it reasonably safe, and, if this cannot be done, it should be closed to the public; citing *Malloy v. Walker Township*, 77 Mich. 448.

McGRATH, J. This action is brought to recover for injuries occasioned by reason of an alleged defective highway.

From St. Clair to Port Huron the highway is laid along the west bank of the St. Clair river. Near where the injury occurred a creek empties into the river, and for a distance of from 30 to 40 rods on either side of this creek the road-way had been built up with logs and earth. To protect this portion of the highway from the action of the water, the township had constructed a breakwater, from 2 to 3 feet high, for some 60 or 80 rods along the river. The breakwater was formed by first laying a line of logs parallel with the river, and then piling traversely thereon slabs and edgings to the height of the road-bed. The slabs were 4 feet long, the outer end of the pile being higher than the inner. The space between the pile of slabs and the bank had been filled in with earth, which extended about half way over the slabs. A bridge about 16 feet wide spanned the creek. North of this bridge the breakwater starts out in a northeasterly direction, so that the road-bed increases in width to some 40 or 50 feet at a point 5 or 6 rods north of the bridge. Going north after crossing the bridge, the usually traveled way inclines to the west. A footpath follows the edge of the slabs from the bridge northerly. There were frequent heavy rains during the fall of 1886, and the water in the river was unusually high, and at the time of the injury stood within 8 inches of the top

of the slab-pile. The boat swells dashed the water into and over the slab-pile, and the filling at the inner end of the slabs had, in places, become undermined, and holes, from 6 to 8 inches in diameter, had appeared, from time to time, on the inside line between the old highway and the edgings. At the time of the injury two holes existed,—one at the bridge, which was "2 feet across," and into which a rail or plank had been stood on end to warn the public; and the other, 20 to 30 feet north of the bridge. The witnesses generally agree as to the number and location of the holes that appeared, although two witnesses say that there were three holes, within the distance given, north of the bridge.

On the evening of November 18, 1886, at between 4 and 5 o'clock, plaintiff, on horseback, was riding north upon this portion of the highway at a gallop, when his horse either stepped into a hole already existing, or broke through at another point where the filling had been undermined, and plaintiff was thrown from his horse, and severely injured.

The first question of fact was, at what point in the road did the accident occur? The person who saw plaintiff fall, and who ran to the spot and assisted him, the person who took plaintiff from the place with a conveyance, and the person who, upon the following morning, took from the hole one of the horse's shoes which had been wrenched off, who were each called by plaintiff, testify that the horse broke through and plaintiff was thrown at a point 5 or 6 rods north of the bridge; that the hole was a fresh one, and there was fresh dirt around it, and there was no other hole, until a point from 3 to 4 rods south was reached. The main traveled track at this point was near the west side of the road. There was room to drive along west of the wagon track. It was about 13 or 14 feet from the east side of the main track to the west

end of the slabs, or to the point where the horse broke through. It had been raining for several days, and rained in the forenoon of the day of the accident, and, although the soil was sandy, there was a depression in the road-way at this point, and water stood to the depth of from 3 to 4 inches across the tracks, and up to within 3 or 4 feet of the place where the horse broke through. The bed of the road-way for several feet west of the slabs was covered with greensward. The wagon tracks were all from 6 to 10 feet west of the slabs at this point. The only place where the traveled track came near the slabs was at the bridge.

Plaintiff's contention was that the accident occurred within a few feet north of the bridge; that there was a mud-hole in the road just north of the bridge, and two holes at the edge of the slabs, within a few feet of each other; that he saw these two holes; that his horse stepped into the second hole before plaintiff could prevent him; that plaintiff pulled up on the horse, and the horse recovered himself, but immediately either stepped into a third hole or broke through; that the horse turned towards these holes to avoid the mud in the road.

Plaintiff's brother, next morning, went to the scene of the accident, and describes two holes, and only two, just north of the bridge, within 8 feet of each other, and says that he saw the prints of the horse at the second hole. Another brother testifies to going to the place three days after the accident, and to finding a water or mud hole in the road-way just north of the bridge, "8 feet wide and 16 feet long," and two holes about 2 feet deep at the edge of the slabs opposite the water or mud hole. A brother-in-law says that he found a mud hole in the road just north of the bridge; that it ran about 16 feet north and south, and about 6 or 8 feet wide; that there were two holes at the slabs about 8 feet

east of the mud hole. Two witnesses say that they saw the place three or four days before the accident, and think there were three holes just north of the bridge. A large number of witnesses were sworn who agree that there were but two holes within six rods north of the bridge before the accident, and they locate these, one at the bridge and the other within two rods north of the bridge.

The only evidence on the part of the plaintiff, other than that of the three witnesses first referred to, tending to locate the place of the injury, was that of plaintiff and that of the brother who says he saw the prints of the horse. No witness denies the existence after the accident of the freshly-made hole 5 or 6 rods north of the bridge. Plaintiff's witnesses generally say that they did not look for it. A number of witnesses locate it, and testify to the fact of its existence, and that it was discovered just after the accident, and that it was made in the greensward, and surrounded with fresh earth.

Counsel for defendant requested the court to instruct the jury as follows:

"1. If the hole made by the plaintiff's horse did not exist before the accident, but was made at the time of the accident by the plaintiff's horse, and there was nothing upon the surface of the road at that point to give notice or knowledge that a hole was being eaten away underneath by the water, and no notice was given to the township officers of such undermining, then the plaintiff cannot recover.

"2. If the hole or holes into which plaintiff's horse fell existed before the accident, and were visible at a distance great enough to allow a person of ordinary care and prudence, riding at ordinary or reasonable rate of speed, to avoid them, then the plaintiff was guilty of contributory negligence, and cannot recover."

The court refused so to instruct.

Counsel for defendant requested leave to submit to the jury the following question:

"Did the horse ridden by plaintiff break through at a point where there was before that no hole and no visible defect?"

The court refused such request.

The court instructed the jury as follows:

"1. If you find that, at the point where the plaintiff was injured, the road was graded up higher than the adjoining land, and was level on top, and the earth thrown over the west end of the edgings in such a manner as made that part of the road-bed apparently intended for travel, and similar in appearance to the remainder of the road-bed west, and level with it, and there was no visible sign to indicate to a person of average perception and care that any portion of the road-bed was unsafe and dangerous, then the plaintiff would have a right to travel over any part of the road so worked and prepared as a road-bed, on using reasonable care and caution to avoid danger and injury.

"2. Where, from the location of the road or road-bed, it is liable to be affected by the action of the water in the river, and rendered unsafe, the officers of the township are required to act upon the warnings of experience conveyed by such circumstances, and the effects commonly known to arise therefrom, and to see to it that such results and defects, if they arise, are remedied within reasonable time, and after a reasonable time and opportunity being given so to do. If a dangerous defect exists, and the officers of the town are actually notified thereof, it is their duty to remedy the same; but actual notice to the officers is not necessary to be shown. If they have knowledge thereof, however obtained, it is sufficient to make it their duty to act; and if, by the exercise of reasonable care, such as prudent men of ordinary and reasonable intelligence possess and might exercise, such as men commonly holding such positions in the country towns usually possess, they would have known of such defect, and failed to repair it after reasonable time and opportunity so to do, and injury results therefrom, the township is liable. Notice or knowledge of the defective and dangerous condition of the highway by the overseer of the highways in the district in which the highway is situated, or by the highway commissioner of the township, is notice to the town-

ship; and whether either of those officers had such notice or knowledge is for you to determine from the evidence and all the circumstances shown. The fact of the road being in a dangerous condition, and the negligence of the township in failing to keep it in reasonable repair, and that the plaintiff was injured in consequence thereof, must be shown to you by a fair preponderance of the evidence."

"There is testimony as to the existence of a mud or water hole in the road near the place where the plaintiff was injured, and that plaintiff diverted or departed from his course to avoid it. Now, it was not necessarily negligence on his part that the plaintiff avoided this hole, either by a voluntary act, or by his horse naturally turning to avoid it; but whether for the plaintiff to do so, and take the course he did, and in the manner he did, was negligence on his part, as I have before defined it, is for you to determine, under all the circumstances of the case. There is some question made in the evidence whether, when the plaintiff's horse stepped in and fell, and plaintiff was injured, there was a visible hole in the surface of the road at the time, or whether, by the action of the water and waves, the bed of the road had been disintegrated, and the dirt thrown or worked out so as to leave a thin crust of earth, upon which the plaintiff's horse stepped, and broke through. Upon this subject I say to you it makes no difference as to the liability of the defendant that there was no existing, visible hole, if from the construction of the road, and the natural and unavoidable action of the water and its washing and suction, the road-way there would be undermined and weakened, and if it was so undermined, and the township officers had notice thereof, or might have known it by the exercise of reasonable diligence and watchfulness, and had reasonable opportunity to keep and make the road safe, and you are satisfied that at the point where the horse fell the road was constructed to all appearance as a part of the regular road, and so near the traveled track that the highway at that point was not, in consequence thereof, in a reasonably safe condition and fit for travel."

On cross-examination, one of plaintiff's witnesses testified as follows:

"*Q.* Was there anything in the appearance of this road

north of the bridge by which you could tell before the hole was made that the earth was not safe at that point?

"*A.* No, sir.

"*Q.* You could not tell until after the hole had been made?

"*A.* No, sir; until it broke through.

"*Q.* Did those holes that were made previous to this occur at intervals?

"*A.* Sometimes."

On re-direct examination the witness testified:

"*Q.* As I understand you, the water undermines the road there and breaks through?

"*A.* Yes, sir.

"*Q.* An examination of the road could be made there to see if it was dangerous?

"*A.* I suppose you could go along and dig, and see if you could make a hole or not; that is about the only way you could tell.

"*Q.* That year, on account of the high water, there was a good deal more washing than at any other time?

"*A.* Yes, sir; there has not been a hole washed this summer, that I know of."

Another witness was asked by plaintiff's counsel:

"*Q.* From the appearance of the surface, could a team drive any place over it?

"*A.* Well, yes; I should not hesitate to drive there."

Another one of plaintiff's witnesses says:

"The road seemed to be on the top perfectly good, and then it would break through.

"*Q.* Was there anything to indicate that the road was unsafe at that point to a person who didn't know it?

"*A.* I think not.

"*Q.* There was not anything to indicate you should drive towards the edgings there?

"*A.* I think not.

"*Q.* Was it grown over with grass out there, so as to show there was nobody ever traveled on it?

"*A.* Yes; I think there was some there."

Another witness says:

"Where he went through it was solid earth above and grassed over, but it washed and cuffed out underneath."

It is clear from this testimony that, within a distance of 30 feet north of the bridge, where the testimony indicates that the road-bed was narrow, there was, and had been for some time, a mud-hole, which travelers would naturally seek to avoid, and within a few feet east of this mud-hole there were two dangerous holes at the edge of the slabs, which had been there for some time; that the town authorities had actual notice of the condition of the road at this point; that in one of these holes a danger signal had been placed by the town authorities; that the other hole was left open and unguarded. If this second hole was so near the traveled way, or way intended for travel, that persons would be likely to get into it in seeking to avoid the mud-hole, the township was guilty of negligence in allowing it to remain there for an unreasonable time. If, however, this hole was so open and notorious that a person using ordinary care would have observed and avoided it, plaintiff was guilty of negligence in riding into it. These questions were for the jury, under the testimony as to the condition of the road at this point, and the state of the weather at the time.

If, however, the accident occurred at the point 5 or 6 rods north of the bridge, and the injury was occasioned by the horse breaking through what, upon the surface, appeared to be solid earth, defendant could not be chargeable with negligence. The court below assumed that the township was bound to know that this particular spot in the road-way was weak, and that it should have repaired it, and laid down one rule whereby to test plaintiff's negligence, and another to measure the defendant's. If the road appeared safe to plaintiff, why not to defend-

ant's officers? This is not a structure like a bridge, where decay inevitably exhibits itself, and where opportunity is had to foresee and avoid that danger. Here were some 60 or 80 rods of this breakwater. Two holes appeared within 30 feet of this bridge, and one 20 or 30 rods north of the bridge. Prior to this accident, but 3 or 4 feet of the entire line had given way. If the accident occurred at the point claimed by defendant, this very horse had probably traversed at a gallop some 3 rods of this line, and had not broken through. This defect was latent. The most that was known by the township authorities was that these breaks were liable to occur, but just where there was no means of discovering, except, perhaps, as was said by one witness, by digging down and finding out, and this very course would make them more liable to occur. There was nothing so suggestive of danger at that point as to make the township liable for the injury. Not only were the surface indications all right, but the horse broke through 13 or 14 feet east of the traveled way. It is probable occurrences, rather than possible happenings, that municipalities are required to guard against. Cavities occur over water-pipes, gas-pipes, and sewer-pipes in the traveled parts of the streets of our densely populous cities, but a cave at one point does not indicate that the street will cave for the whole length of the conduit, and does not impose the duty of testing the entire length of the street. Defendant was entitled to an instruction that, if the accident occurred at the point 5 or 6 rods north of the bridge, and the hole made by plaintiff's horse did not exist before the accident, but was made at the time of the accident by plaintiff's horse, and there was nothing upon the surface of the road at that point to give notice or knowledge that a hole was being eaten away underneath by the water, the plaintiff could not recover.

Defendant's second request was substantially given.

Defendant was entitled to have the above question submitted to the jury.

It must be conceded, in view of all of the testimony, that, if the accident occurred near the bridge, it must have happened because plaintiff's horse stepped into an existing hole; and the only questions, then, were the width of the road at that point, the distance of the hole from the usually traveled way, as to whether defendant was liable for permitting it to remain at that point, and whether plaintiff was negligent in not avoiding it.

The first instruction given by the court was correct. It is not unusual for persons to deviate from the beaten track upon a highway. There is a distinction between the beaten track and the way intended for travel. There is a class of cases which hold that a person deviating from the traveled way assumes the risk, but in those cases the way intended for travel was forsaken.

The second instruction was erroneous, in that it, applied to the facts in the present case, informed the jury that it was the duty of the township to protect the public against latent defects in the highway.

The instruction numbered 3 was clearly erroneous, for the reasons already given.

The judgment is reversed, and a new trial ordered, with costs of this Court to defendant.

The other Justices concurred.