### AUGUST BLANK v. THE TOWNSHIP OF LIVONIA.

[See 79 Mich. 1.]

*Negligence—Defective bridge—Evidence—Question for jury.*

Where in a suit against a township for injuries received by the falling of a bridge, caused by latent defects in one of the stringers where notches had been cut to receive the braces, it appears that six months before the accident the highway commissioner replaced the other stringer, which he found to be unsafe by reason of like defects, and that both stringers were taken from the same tree, and the commissioner does not claim to have made any examination of the notches in the remaining stringer to ascertain its condition, it is a question for the jury whether he was negligently ignorant of its defective condition.

Error to Wayne.    (Gartner, J.)    Argued February 10, 1893.    Decided April 7, 1893.

Negligence case.    Defendant brings error.    Affirmed. The facts are stated in the opinion, and in 79 Mich. 1.

*Atkinson & Carpenter*, for appellant.

*John D. Conely*, for plaintiff.

LONG, J.    This case was in this Court at the October term, 1889, when the judgment of the court below was reversed and a new trial ordered.    The opinion is found

in 79 Mich. 1. The cause has again been tried, resulting in a verdict for the plaintiff for $2,000. The facts are quite fully stated in the former opinion, and only such of them will be set out as are necessary to a discussion of the questions raised.

The plaintiff was driving across a truss bridge in the defendant township with a span of horses attached to a double wagon, containing half a cord of wood. When about one-third of the way across, the bridge fell, precipitating him and his team into the stream, about 12 feet below. The bridge was constructed on two stringers, 8 by 10 inches in size, and about 40 feet long, extending from bank to bank across the stream, the ends resting upon what are called "bond timbers." These stringers were made from the same tree. Near either end of each stringer a slot was cut two inches deep, into which were set braces extending inward, and upon which was placed a straining beam. The braces were about 14 feet in length each, and the straining beam about the same length, and being about $3\frac{1}{2}$ feet above the stringer. Similar notches were cut in the under side of the straining beam, and into which the upper ends of the braces were placed. Iron rods extended downward through the straining beam, braces, and stringer, supporting the needle beam under the stringer. The braces were also bolted at each of their lower ends through the stringer. The slots in the stringers extended across the entire width. The braces were a little narrower than the stringers, being six inches in width, while the stringers were ten.

It is not contended but that the plaintiff was in the exercise of due care in crossing the bridge. After the bridge fell, it was discovered that the west stringer had broken into three pieces, the break occurring at the places where the rods passed down through the stringer to support the needle beams. On the trial the disputed question of fact

was whether the township had notice or knowledge of the defect which caused it to fall, and negligently failed to remedy it, and whether the township officers should have known its condition, and made the necessary repairs.

The bridge had been built about eight years. In the fall of 1887 the attention of the commissioner of highways was called, to the condition of the bridge. He made an examination, and found the east . stringer defective. He put in a new stringer on that side at that time, and found, upon removing the old one, a slight decay where it was notched for the braces. The shoulder formed by the notch in the stringer had given out, and the brace had split, and slid along around the bolt. The commissioner claims that at that time he examined the west stringer, and found it sound. His examination consisted in sounding and chopping into it in places with an axe along the side. He made no claim that he examined these notches in the west stringer. It was claimed on the trial that the weakness of the bridge and the cause of its fall was the defect in these notches where the braces set in, and that, if the defendant's officers did not have actual notice or knowledge of the defect, there was sufficient evidence to go to the jury from which they might determine that these officers would have known of its defective condition had they exercised due care.

The court substantially instructed the jury that it is not always necessary for the plaintiff to prove actual knowledge by, or notice to, the township officers; that if the condition of the bridge was such that it was not in good repair and reasonably safe and fit for travel, and the circumstances were such and so long continued that the highway commissioner or overseer ought to have known that the bridge was not in good repair and reasonably safe and fit for travel, then knowledge or notice is implied, and the case must be regarded the same as though the proper

township officers had actual knowledge or notice; that whatever fairly puts a party upon inquiry must be regarded as sufficient notice where the means of knowledge are at hand, and, where he omits to make use of such means of knowledge, he is chargeable with knowledge of all the facts which, by proper inquiry, he might have ascertained.

It is claimed, however, by the defendant's counsel that there were no patent defects in the bridge; that whatever defects existed were unseen or latent. When the case was in this Court before, a somewhat erroneous idea prevailed as to the real cause of the bridge's falling, and it was said by Mr. Justice CHAMPLIN upon the claim made then that the defects, if any existed, were latent.

"In respect to latent defects in the timbers of a bridge, it is the duty of the highway commissioner to make proper and seasonable inspection to ascertain its condition as to safety for the public travel, and to exercise due care and caution in so doing to find defects; and the kind of inspection and the amount of care and caution required of him upon which to predicate negligence in the performance of the required duty will depend upon all the facts and circumstances of the particular case, and the particular neglect of duty must be pointed out. In this case there was no defect apparent, and no actual knowledge by or notice to defendant of the defect which existed, and through which the accident was caused. And it was not pointed out or shown what the commissioner of highways ought to have done which he did not do to discover the defect in the stringer complained of."

This Court, at the time that opinion was rendered, was acting under the belief that the plaintiff claimed the defects to exist at the points where the bolts passed through the stringer, and which supported the needle beams,—the points where it was found broken after the injury. This being so, it was difficult to see what more the commissioner could have done to discover them than to sound it along there with the axe, and chop into it, which he claims to have done, and found it sound in

those places. Upon the present trial it is more clear
where the defect really existed, and what the claim of the
plaintiff is in that respect. It appears that the stringer
was defective in the same places where the east stringer
was defective in the fall of 1887, and which was then
replaced by a new one; that is, in those notches where
the braces set into the stringer. The commissioner found
the east stringer defective in those places in the fall of
1887.[1] They were made from the same tree, and were
notched in the same way; yet he does not claim to have
made any examination of those particular places in the west
stringer. The whole strength of the bridge depended
upon the good condition of these parts of the stringers.
Against the shoulders formed by these notches rested the
foot of each brace, and the whole weight of the bridge and
whatever it carried rested against these shoulders; so that
a defect in one of them was dangerous to the whole struct-
ure. It would seem that it was one of the places that
an ordinarily prudent man would have examined when he
found that one was defective. At least, it was a ques-
tion for the jury to determine whether there was not suf-
ficient notice to the commissioner to put him upon inquiry
as to the condition of the other stringer at that place
when he found the east one so defective that it had to be
removed. If this examination had been made, it might
then have been discovered that the west stringer was also
defective. Though the defect was latent, the question
was a proper one, under the circumstances shown, for the
jury to determine whether the officers of the township
used the diligence necessary in ascertaining the condition
of the bridge. *Township of Medina v. Perkins*, 48
Mich. 67.

That case was very much like the present. The bridge

---

[1] The accident occurred May 8, 1888.

is there described as a truss bridge. It was found that the pressure had forced the needle beam down over the nut and washer on the end of the rod by tearing a hole through the beam, and that this was due to a small spot of decay within the beam and around the rod, and which had been hidden by sound wood on the surface, constituting a shell an inch or more in thickness over the decayed portion. The plaintiff claimed that, in view of the state of things existing, the want of knowledge was itself a fault, for which the township might be held liable. It was said by this Court that—

"A defect may exist and be unknown, and the town still be liable, on the ground that the prime fault consists in being ignorant; it being a clear principle that a want of knowledge may, in given circumstances, imply a want of due care."

The same principle is laid down in *Dotton v. Village of Albion,* 50 Mich. 129; *Stebbins v. Township of Keene,* 55 Id. 552; *Woodbury v. City of Owosso,* 64 Id. 239; *Moore v. Township of Kenockee,* 75 Id. 332; *McKeller v. Township of Monitor,* 78 Id. 485; *Campbell v. City of Kalamazoo,* 80 Id. 655. The court below was but following this rule in the charge given to the jury. The question was one for the jury to determine, under the circumstances above stated.

It is claimed that the plaintiff on the present trial sought to make a different case than that presented by the former record; that on the former trial the negligence claimed was in not discovering latent defects in other parts of the stringer, while in the present case the defect complained of is in the stringer at the foot of the brace. Counsel requested the court to charge that—

"There is no testimony showing visible surface decay, except that testimony which places decay near the foot of the brace at the south end of the stringer, and, as that

testimony must be disregarded, your verdict must be for the defendant."

This was properly refused. The counsel were undoubtedly misled by the statement in the former opinion of this Court which has before been referred to. The record in the former trial has been examined, and we find that the questions here presented were presented by that record; but, from the argument then made, this Court was laboring under a misapprehension as to the exact claim made and the exact location of the defect complained of.

Claim is also made that the court was in error in admitting testimony that the timber was unfit to put into the bridge at the time of its construction, as no such claim was made in the declaration. The question was asked of a witness: "Did you consider it fit timber to be put in a bridge?" *Answer:* "No, sir." After it was answered, defendant's counsel moved to strike it out. This was consented to. The court made no ruling upon the question, and was not asked to. We see no error in this.

Error is assigned upon some other rulings in the admission and rejection of testimony, which we have examined, and which must be overruled, and need not be discussed.

We find no error in the record.

Judgment must be affirmed, with costs.

The other Justices concurred.