THOMAS v. CITY OF FLINT.

MUNICIPAL CORPORATIONS — DEFECTIVE BRIDGE—LIABILITY FOR INJURY—FAILURE TO INSPECT.

> Under 1 Comp. Laws 1897, § 3441 *et seq.*, imposing liability on a city for an injury resulting from a defective bridge, providing it is shown to have had reasonable time and opportunity, after notice of the defect, to repair the same, such liability cannot be predicated upon neglect to make inspections merely, though it appear that a proper inspection would have disclosed latent defects which caused the injury; distinguishing *Township of Medina* v. *Perkins,* 48 Mich. 67, and subsequent cases. MONTGOMERY, C. J., and MOORE, J., dissenting.

Error to Genesee; Wisner, J. Submitted October 6, 1899. Decided February 20, 1900.

Case by Gideon Thomas against the city of Flint for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Ed. S. Lee* (*J. S. Parker*, of counsel), for appellant.

*Johnson & Stevens*, for appellee.

HOOKER, J. The plaintiff was injured upon a Tuesday night, through the absence of a short board or plank forming part of a bridge floor, which was first noticed to be loose on the Saturday night previous. On that occasion it was laid back in place by the observer. On Monday or Tuesday evening the witness who first discovered that it was loose found that it was gone, and that a piece of sewer crock had been laid over the place where the missing board had been. The evidence showed that the city employed a man to walk over its walks and bridges, including this bridge, with a view to the immediate repair of defects. Apparently his duty was not to tear up boards to examine the joists below, but merely to inspect

by looking at and trying the walks and planks by stepping upon them, and noticing any outward signs of weakness or danger. The circuit court permitted the jury to find a verdict against the defendant upon the ground that it did not make a reasonable inspection of the bridge, and that it was the duty of the city to make such inspection. The court's charge contained the following:

"Under the statute which I have read to you, the notice mentioned therein may be either actual or constructive,—actual, where some officer of the city, forming a part of that branch of the city government having some authority in respect to sidewalks of said city, is directly called to such defect; constructive, where the defect is of such a character, and has existed for such a period, that the city is guilty of negligence in not being aware of such defect, and in such case the law presumes that the city actually knew of such defect. But, in order to make the law in regard to constructive notice apply, you must be able to find, from a preponderance of the evidence, that, at the very place where it is claimed the injury was received, the bridge was not in good repair, and in a condition reasonably safe and fit for travel, and that the city was guilty of negligence in not informing itself of such condition, and that sufficient time had elapsed after the city, by the exercise of ordinary care, could have informed itself of such defect, and have had a reasonable opportunity to make such repairs. I will also state to you that, in order to make the city liable, you must be able to find, from a preponderance of the evidence, that the city was negligent in not ascertaining the existence of the unsafe condition, and that, had it performed its duty in that respect, it would have had reasonable opportunity to put it in a condition required by law."

Previous to the year 1879, those who suffered injury through accidents due to the neglect of municipalities to keep the highways in a reasonably safe condition had no right of action against such municipalities. See *Merkle* v. *Township of Bennington,* 58 Mich. 158 (24 N. W. 776, 55 Am. Rep. 666), and cases cited. In that year an act was passed creating a liability in such cases. In 1887 a new act was passed, much like that of 1879, which it superseded,

and plaintiff's action rests upon the later act.   Act No. 264,
Pub. Acts 1887 (1 Comp. Laws 1897, § 3441 *et seq.*).
Section 1 gives a right of action for damages to any per-
son sustaining bodily injury by reason of neglect to keep
highways, sidewalks, and bridges in reasonable repair,
and in condition reasonably safe and fit for travel, by the
township, village, or city whose authority extends over
the same.    Section 2 is as follows:

"If any horse or other animal, or any cart, carriage, or
vehicle or other property, shall receive any injury or
damage by reason of neglect by any township, village,
city, or corporation to keep in repair any public highway,
street, bridge, sidewalk, cross-walk, or culvert, the town-
ship, village, city, or corporation whose duty it is to keep
such public highway, street, bridge, sidewalk, cross-walk,
or culvert in repair shall be liable to and shall pay the
owner thereof just damages, which may be recovered in
an action of trespass on the case before any court of com-
mon jurisdiction:   *Provided,* that in all actions brought
under this act it must be shown that such township, vil-
lage, or city has had reasonable time and opportunity,
after knowledge by or notice to such township, village, or
city that such highways, streets, bridges, sidewalks, cross-
walk, or culvert have become unsafe or unfit for travel, to
put the same in the proper condition for use, and has not
used reasonable diligence therein after such knowledge or
notice."

The defense in this case is that the plaintiff has failed
to show that the city had knowledge or notice that the
bridge was unsafe or unfit for travel, as required by the
proviso.

It is not claimed that the defendant's officers had actual
notice that the plank was loose, or that the bridge was in
any way unsafe, or likely to become so in the near future,
but it is contended that the stringer had begun to decay,
and that the city had constructive notice of that fact
through its alleged neglected duty of a proper inspection;
and we are cited to the case of *Moore* v. *Township of
Kenockee,* 75 Mich. 332 (42 N. W. 944, 4 L. R. A. 555),
as an authority supporting the contention.    In that case

contention was made that recovery could not be had in the absence of express notice; but the court held that such would be a too strict construction of the act, and that the circumstances might justify the jury in finding that the township had what was called "constructive notice." The language which counsel urge so forcibly is used in that case, as it had been in others, viz.:

"A defect may exist and be unknown, and the town still be liable, on the ground that the prime fault consists in being ignorant; it being a clear principle that a want of knowledge may, in given circumstances, imply a want of due care."

Upon this and similar language is based the argument that the city is chargeable with constructive notice of all things which the proper performance of the alleged neglected routine duty of inspection would have disclosed, and it is said that, although no officer supposed the bridge was in any respect weak, or had any reason to believe, or even suspect, it, yet the failure to ascertain the fact is due to neglect; hence the city is chargeable with the notice that the statute makes essential to a right of recovery. It seems obvious that such a rule is equivalent to charging the city for neglect to keep its bridge in safe condition, and that the declaration might as well charge such neglect directly as through the circumlocution of constructive notice, and that the result is the practical nullification of the proviso requiring notice; but it is urged that the decisions admit of no other interpretation, and have settled the question in accordance with the contention of the plaintiff's counsel. We will review the history of this question.

The case of *Township of Medina* v. *Perkins*, 48 Mich. 67 (11 N. W. 810), is the rock upon which plaintiff bases his claim. It arose under the *earlier statute*, which *did not contain the requirement* that knowledge or notice should be shown. It was there said that, while "township officers are only required to exercise ordinary care and prudence and reasonable intelligence in performing their duty of

supervising the condition of roads and bridges, and keeping them in repair," "want of knowledge sometimes implies a want of due care; as, where township officers, whose duty it is to keep bridges in a safe condition, do not know of defects which an examination would readily disclose." In the case of *Stebbins* v. *Township of Keene*, 55 Mich. 522 (22 N. W. 37), the language of *Township of Medina* v. *Perkins* was repeated, viz.:

"A defect may exist and be unknown, and the town still be liable, on the ground that the prime fault consists in being ignorant; it being a clear principle that a want of knowledge may, *in given circumstances*, imply a want of due care [*i. e.*, negligence]. The general duty of a township is to exercise, through its officers, a reasonable supervision over its ways and bridges, and, within fairly practicable limits, to be watchful of their condition and trustworthiness, and see that they are kept in a reasonably safe condition for public travel. Its officers may not ignore the dictates of common sense and the lessons of ordinary experience, and *refuse to see or refuse to heed what others see and others understand. When it is generally known that a bridge has become decrepit, or when a bridge has stood so long that there is much suspicion of it, the officers of the township may not disregard the warning conveyed by these circumstances, and think to excuse their neglect to take action on the ground of having had no actual notice of a dangerous infirmity.*"

See, also, *Woodbury* v. *City of Owosso*, 64 Mich. 239, 248 (31 N. W. 130).

In the year 1887 a radical change was made in the law. See Act No. 264, Pub. Acts 1887. The act will be found in chapter 91, 1 Comp. Laws 1897, where copious notes give the history of this legislation, and its judicial interpretation. The important change is found in the proviso to section 3442. It reads as follows:

"*Provided*, that in all actions brought under this act it must be shown that such township, village, or city has had reasonable time and opportunity, after knowledge by or notice to such township, village, or city that such highways, streets, bridges, sidewalks, cross-walk, or cul-

vert have become unsafe or unfit for travel, to put the same in the proper condition for use, and has not used reasonable diligence therein after such knowledge or notice."

It will be observed that this language implies that a municipality can only be held liable for injuries through defects of which it had notice or knowledge. As this was the substantial change made, we must conclude that mere neglect was not thereafter to be enough to create a liability, and that the new act required not only proof of negligence in permitting the defect to exist, but also knowledge or notice of its existence, and an opportunity to remedy the defect after such notice or knowledge. The pointed language of the act forbids any other construction, and we should expect to find that thereafter proof of notice or knowledge was held indispensable. We will examine subsequent cases.

At the April, 1889, term of this court, the case of *Moore* v. *Township of Kenockee* was heard. See 75 Mich. 332 (42 N. W. 944, 4 L. R. A. 555). That case arose under the law of 1879, and it was contended that the plaintiff's cause of action was destroyed by the repeal of the earlier by the later act. The court held otherwise, however. That being settled, the court proceeded to ascertain whether the case had been brought within the restrictions of the amendatory act as to notice. It is observable that the court did not say that the cause of action would be proved by showing a defect long existing, and a failure to inspect or to discover it, or that no notice was necessary, as might, perhaps, be supposed from the case of *Carver* v. *Plank-Road Co.*, 61 Mich. 584 (28 N. W. 721), but proceeded to determine what would be *sufficient notice*, denying the contention of the defendant that proof of actual knowledge or express notice was essential. It quoted the testimony, which showed that the stringers were rotten, and that *such fact was open to casual observation;* that they were very old, *which tended to corroborate the statement as to condition;* that at least three different officers of the township were

notified of the fact; and that one of them removed the planking, and put on new, thereby *necessarily* having an opportunity to observe the rotten condition of the stringers, *patent to observation,* and *seen by others.* Upon this proof the court instructed the jury that:

"In regard to the information claimed to have been given to the commissioner by the witness Shutler, you will determine from the evidence what was said, and whether it was sufficient to fairly apprise the commissioner that the bridge was unsafe.  *  *  *  If you believe that to be the fact from the evidence,—that is, that it was unsafe, and that the town officers, namely, the commissioners or overseers of highways, had actual notice thereof, and they had unreasonably neglected to repair the bridge, and make it reasonably safe for travel, having sufficient time to do so,—the defendant would be liable; *  *  *  provided, that you find that the engine of plaintiff was not of such weight as to be unreasonable to be transported over the bridge, and the plaintiff himself was not guilty of want of ordinary care and caution in crossing it.  It is the duty of a township, through its officers, to exercise reasonable supervision over its roads and bridges, to see, within practicable limits, that they are kept in reasonably safe condition for public travel. Its officers may not ignore the dictates of common sense and the lessons of ordinary experience, or refuse to see or refuse to heed what others see and others understand. When it is generally known that a bridge has become decrepit, or when a bridge has stood so long that there is much suspicion of it, the officers of the township may not disregard the warning conveyed to take action, on the ground of having no actual notice of the dangerous infirmity.  This is substantially the rule laid down by the Supreme Court of this State in another case on this subject, and I think it also applicable to this case. So that, if no actual notice of the bridge being unsafe was given to the township officers, still, if they, by the exercise of reasonable care, such as men possessed of ordinary and reasonable intelligence might exercise, would have known of such condition, or if, through any other means, they had actual knowledge that the bridge was unsafe, this would answer the requirements of the statute as to notice or knowledge on the part of the defendant."

After some quotations from cases which arose under the

law of 1879, which the court said were pertinent *as aids to construction*, it was added that the defendant's counsel contended that, under the later act, proof was required that the defects existed, and that the township had reasonable time and opportunity to put the bridge in repair after *express* (italicized) knowledge or information of such defects; and that:

"The language of the statute is, 'after knowledge by or notice to such township.' The word 'notice' is not used as synonymous with the word 'knowledge.' *Whatever fairly puts a party upon inquiry* is sufficient notice, where the means of knowledge are at hand; and, if a party omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained."

This was, in effect, holding that notice of facts *which would lead an ordinarily prudent man* to make an examination, which, if made, would disclose the defects which caused the injury, was sufficient notice. As the term "constructive notice" is given prominence in the discussion of the case before us, we remark that it is used in the case under discussion as it occurs in a quotation, where Mr. Justice COOLEY is said to have laid down a rule that justified the statement in the *Kenockee Case* that "whatever fairly puts a party upon inquiry is sufficient notice." The quotation was as follows:

"In *Converse v. Blumrich*, 14 Mich. 120 (90 Am. Dec. 230), Mr. Justice COOLEY laid down the rule as follows: 'A person is chargeable with constructive notice where, having the means of knowledge, he does not use them.'"

A reference to that case will show the connection in which Mr. Justice COOLEY used that language. He continued as follows:

"If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but, on the contrary, studiously avoids making, such obvious inquiries, he must be taken to have notice of those facts which, if he had used

123 MICH.—2.

such ordinary diligence, he would readily have ascertained. *Whitbread* v. *Jordan*, 1 Younge & C. 303. But he cannot be bound to do more than to apply to the party in interest for information, and will not be responsible for not pushing his inquiries further, unless the answer which he receives corroborates the prior statements, or reveals the existence of other sources of information."

We see from this that it falls short of the claim that notice is to be presumed because of a failure to inspect or inquire in the performance of routine duty, but does hold that it may be *predicated on some information which should lead the mind to suspect danger*, and therefore inquire. And in such case *it is not a conclusive presumption of law*, as it is necessary for a jury to determine the extent of his information and of his duty to inquire.

It may be said that the following language in the charge (75 Mich. 339) covers the plaintiff's contention, and that by affirming the case this court adopted it, viz. :

"So that, if no actual notice of the bridge being unsafe was given to the township officers, still, if they, by the exercise of reasonable care, such as men possessed of ordinary and reasonable intelligence might exercise, would have known of such condition, or if, through any other means, they had actual knowledge that the bridge was unsafe, this would answer the requirements of the statute as to notice or knowledge on the part of the defendant."

But this must be read in the light of what precedes. The whole paragraph of the charge is as follows:

"When it is generally known that a bridge has become decrepit, or when a bridge has stood so long that there is much suspicion of it, the officers of the township may not disregard the warning conveyed to take action, on the ground of having no actual notice of the dangerous infirmity. This is substantially the rule laid down by the Supreme Court of this State in another case on this subject, and I think it also applicable to this case. So that, if no actual notice of the bridge being unsafe was given to the township officers, still, if they, by the exercise of reasonable care, such as men possessed of ordinary and reason-

able intelligence might exercise, would have known of such condition, or if, through any other means, they had actual knowledge that the bridge was unsafe, this would answer the requirements of the statute as to notice or knowledge on the part of the defendant."

The court so understood it, and approved of the charge as a whole, in the following language:

"We think the charge of the court, taken as a whole, was within the rule, even if the testimony did not show the township had knowledge of the unsafe condition of the bridge; but there was some evidence to go to the jury that the township officers whose duty it was to repair the bridge had knowledge of its unsafe condition, and that question was fairly left for their consideration, under the charge of the court. Brown was commissioner of high-ways, and was advised in 1886 that certain bridges were out of repair,—this bridge among the number,—and there is no claim that he made or attempted to make any exam-ination of them. In the same year the overseer of high-ways of that district was also notified, and the only repair made was the putting on of new planks. It is contended, however, that notice to the overseer of highways was not notice to the township. 1 How. Stat. § 1445, provides that highway commissioners, street commissioners, and all other officers having charge of bridges, etc., and the care and repair thereof, are hereby made and declared to be the officers of the township, etc., wherein they are elected; and by section 1379 it is further provided: 'The overseer shall have the care of all bridges within his district, and shall see that the same are kept in repair, and, when the cost of repairing any bridge shall exceed twenty dollars, he shall report to the commissioner the condition of such bridge, and the necessity for such repairs.' Under the circumstances here stated, the court very properly refused the instructions asked by counsel for defendant, and we find no error in the charge as given. It is conceded that this testimony would have sustained the general verdict under the act of 1879. We think it equally clear that it sustains the verdict under the act of 1887."

The foregoing discussion shows the actual questions decided in the *Kenockee Case*, and, unless we are to give technical effect to some of the language, to the exclusion of other portions, and without regard to what was really

in issue, we may reasonably say that the case did not commit the court to the doctrine for which the plaintiff contends. In the case of *Carroll* v. *Carroll's Lessee*, 16 How. 287, the Supreme Court of the United States quotes the language of Mr. Chief Justice MARSHALL condemning such practice:

"'It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which will serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.' *Cohens* v. *Virginia*, 6 Wheat. 399. The cases of *Ex parte Christy*, 3 How. 292, and *Peck* v. *Jenness*, 7 How. 612, are an illustration of the rule that any opinion given here or elsewhere cannot be relied on as a binding authority unless the case called for its expression. Its weight of reason must depend on what it contains."

This court has announced the same doctrine repeatedly. We feel justified in saying, therefore, that the *Kenockee Case* does not settle the question raised against the defendant's contention.

The *Kenockee Case* was followed in point of time by two cases which were decided the same day. They were *McKeller* v. *Township of Monitor*, 78 Mich. 485 (44 N. W. 412), and *Blank* v. *Township of Livonia*, 79 Mich. 1 (44 N. W. 157). Both opinions are written by Mr. Justice CHAMPLIN. In the former of these, a stringer broke under a steam boiler filled. with hot water, and plaintiff's horses were injured by steam. The defect alleged and proved was an internally rotten stringer. The overseer testified that he inspected that stringer two weeks before the accident, and that it appeared to be sound. The circuit judge charged as follows:

"But another witness, who was the overseer of highways of the township, says that at a certain time he examined the bridge, and examined this particular stringer, and he has told you what he found. I do not recollect myself the exact time that he says he made this examination, but you will probably recollect it. In your judgment, did that overseer then find the bridge to be reasonably safe and fit for travel? If not, he then and there had notice; that is, if the bridge was then unsafe and unfit for travel, and he was there for the purpose of making an examination, and did make an examination, as he says, of course the township then and there had notice that it was unsafe and unfit for travel. I say, if that was so, and he was making that examination, he had that notice, and so the town had. If this timber was so rotten as to be unsafe at the time of the accident, then was it probably safe and sound at the time he saw it? Was it possible for the timber to be as safe as he says it was when he saw it, and then to be as rotten as the other witnesses say it was when it broke? Is it possible that the stick was then rotten, or that it was then sound? Was his examination careful and thorough? If you come to the conclusion that the stick was sound when he saw it, then it follows, of course, that from that examination he got no knowledge or notice that would bind the township, —no notice or knowledge of any unsoundness. But, if it was then rotten, he ought to have found it out, and it was negligence in him, and it was negligence in the township, not to find it out. If the stick was rotten, and he examined it for rot, he and the township had notice of its rottenness, whether he found it or not. If an oak log of that size and exposure to view is so rotten as to be unsafe for use, anybody that exercises ordinary prudence and care and good judgment can find it out, if he tries."

This did not receive the approval of this court, which said:

"The circuit judge, in this portion of his charge, pretty effectually impeached this witness, and, we think, lost sight of the other testimony that, to appearances, the stringer was sound upon the surface. If the jury believed that it did so appear upon the surface, then, in the absence of actual knowledge or notice, the question would be whether they had used due diligence in discovering the defect, and neglected to do that which common prudence

and caution required them to do to ascertain the condition
of the timber."

It is contended that this implies a liability resting upon
a duty to inspect; but the most that it can justly be said
to imply is that the jury might find that the inspection
*actually made* should have put him on inquiry, and it
was held that the judge was wrong in saying that even
this was notice of a latent defect.    It certainly does not
say that, had no inspection been made, the township would
have been chargeable with notice.   If it were, all of the rea-
soning about notice would be a work of supererogation,
for the court might as well have said that the township
was liable for its failure to inspect properly, under its duty
to keep the highways in repair.    That would have been,
as to claimant, tantamount to saying that the amendatory
act really made no change in the law theretofore existing.
We ought not to put such a construction upon this case
unless it is unavoidable; and it is not, for we can as well
say that what was meant was that the inspection of the
bridge actually made, considering the proved condition of
the bridge, *of necessity conveyed information* which
*should have put* the officer on inquiry, as any other infor-
mation of the facts discovered would have done, and there-
fore that the jury might say it was notice, under the *Ken-
ockee Case.*

The case of *Blank* v. *Township of Livonia, supra,*
was a similar case of internal rotting.    Actual notice was
proved, given by a bridge builder to the commissioner.
He pronounced the bridge defective, and offered to build
a new one.    The commissioner replied that "it needed only
a new stringer," and this was put in.    The commissioner
at this time examined one stringer, and, finding no visible
defect, concluded that the bridge was all right.    The
opinion says:

"The main question in controversy was whether the
defendant knew, or ought to have known, of the existence
of the defect in the west stringer of the bridge.    No
actual notice of the particular defect was shown.    The

members of the township board and the highway commissioner, after October, 1887, never heard of the bridge being out of repair, and had no knowledge and no notice of the defect in the west stringer until after the accident. The question was, therefore, narrowed down to whether they ought to have known it, and that resolved itself into whether they had used due diligence in inspecting the bridge, and due caution and prudence to ascertain and discover defects therein. The care and caution required in ascertaining whether timbers in a bridge are sound must necessarily depend in a measure upon the length of time the bridge has been built. Especially is this so in respect to the soundness or unsoundness of the timber from internal decay or 'dry rot.' The kind of timber also has a bearing upon the subject, and whether round or square. In this case both pieces of timber of which the stringers were made were taken from the same tree, and were swamp oak. Seven months before the accident, the east stringer was removed, and replaced by a new one. The timber was sound, but it had split, which made it defective. With this fact before him, there was nothing to lead him to suspect that the other stringer was decayed internally. Nevertheless, he inspected it, and tested it in such manner as he could without boring into it. The length of time such timber, in such position and use, usually remained sound, had an important bearing upon the extent and manner of inspection required of the commissioner. It is common knowledge that some kinds of timber remain sound longer than others, when exposed to the elements; and as bearing upon the care and prudence of the commissioner in making the inspection in October, 1887, the testimony of the bridge builder, as an expert, ought to have been received. This doubtless would have involved the inquiry and elicited the fact as to the length of time occupied in sapping the vitality of timber which is inflicted with an internal decay or dry rot, and the necessary and proper means of discovering its existence.

' "It seems to have been assumed that because the stringer broke from dry rot in May, 1888, it was equally defective from that cause in October, 1887. But there is no such presumption. A state of facts once existing is sometimes and usually presumed to continue, but they are not presumed to have always existed. Because the condition of the stringer in May, 1888, was that of a piece of timber in which the center was decayed or rotten, did not

authorize the presumption that it was always rotten from the time it was placed in the bridge. On the contrary, it being sound then, it would be presumed to remain sound for such length of time as such timber usually remains sound when exposed as that was.

"Townships are not insurers of the safety of the bridges and highways within their limits. The statute imposes upon them the duty of keeping the highways and bridges in repair, and in a condition reasonably safe and fit for the public travel. But they are liable for a neglect of this duty. only when it is shown that such township has had reasonable time and opportunity, after knowledge or notice to such township that such highway or bridge has become unsafe or unfit for travel, to put the same in proper condition for use, and has not used reasonable diligence therein after such knowledge or notice. Act No. 264, Pub. Acts 1887, § 2. When the defects are open to view, or apparent to persons traveling over the bridge or along a highway, and have existed such a length of time that the proper officers whose duty it is to see that the highway is kept in repair would be considered negligent in not seeing such defects, then the jury may presume notice or knowledge of such defects; but *this presumption cannot arise from latent defects not open to view.*"

This case was reversed, yet it is now claimed to be authority for the proposition that a liability can exist for the want of an inspection, notwithstanding the fact that the case holds that there was no liability, though an inspection was actually made. Stress is laid upon some language used, which is as follows:

"When the defects are open to view, or apparent to persons traveling over the bridge or along a highway, and have existed such a length of time that the proper officers whose duty it is to see that the highway is kept in repair would· be considered negligent in not seeing such defects, then the jury may presume notice or knowledge of such defects; but *this presumption cannot arise* from *latent defects* not open to view. In respect to latent defects in the timbers of a bridge, it is the duty of the highway commissioner to make proper and seasonable inspection to ascertain its condition as to safety for the public travel, and to exercise due care and caution in so doing to find defects; and the kind of inspection and the amount of care

and caution required of him, upon which to predicate negligence in the performance of the required duty, will depend upon all the facts and circumstances of the particular case, and the particular neglect of duty must be pointed out.   In this case there was *no defect apparent,* and *no actual knowledge* by *or notice* to defendant *of the defect* which existed, and through which the accident was caused.   And it was not pointed out or shown what the commissioner of highways ought to have done which he did not do to discover the defect in the stringer complained of."

This language can as well be held to apply to the question, "Was the condition of the bridge such as to put upon inquiry one actually inspecting it?"   If a township is liable for the existence of latent defects because of a neglected duty of inspection, why did the court say "that a presumption of notice cannot arise from latent defects not open to view;" and again, "It was not pointed out or shown what the commissioner ought to have done which he did not do to discover the defect complained of" (and it might have been added, "after having his attention called to the defective condition of the bridge)?"   This *Livonia Case* was before the court again (95 Mich. 229, 54 N. W. 877); the opinion being written by Mr. Justice Long, who also wrote the *Kenockee Case.*   On this trial the case turned on a different defect; viz., it was said:

"The whole strength of the bridge depended upon the good condition of these parts of the stringers.   Against the shoulders formed by these notches rested the foot of each brace, and the whole weight of the bridge, and whatever it carried, rested against these shoulders, so that a defect in one of them was dangerous to the whole structure.   It would seem that it was one of the places that an ordinarily prudent man would have examined *when he found that one was defective.   At least, it was a question for the jury* to determine whether *there was not sufficient notice* to the commissioner to put him upon inquiry as to the condition of the other stringer at that place, when he found the east one so defective that it had to be removed.   If this examination had been made, it might then have been discovered that the west stringer was also defective.

Though the defect was latent, the question was a proper one, *under the circumstances shown*, for the jury to determine whether the officers of the township used the diligence necessary in ascertaining the condition of the bridge."

There was the recognition of the same rule, viz., that the *circumstances actually brought home to the knowledge of the officer* were such as to permit a jury to say that they should have put him upon inquiry, which would have led to the discovery of the defect, and that this was sufficient *notice*. It was therefore proper to use the language upon which the changes are rung,— that "a defect may exist and be unknown, and the town still be liable, on the ground that the prime fault consists in being ignorant; it being a clear principle that the want of knowledge may, *in given circumstances*, imply a want of due care."

We have thus seen that all of these cases turn upon the questions: "What is sufficient notice?" "What will authorize the submission of the question of notice to the jury?"—and none of them purport to decide the question raised here, viz.: "Whether notice can be predicated upon a mere failure to perform the alleged duty of inspection, when nothing has occurred, or been brought to the officer's knowledge or attention, that a defect is even suspected."

There are other cases to which attention will be called in this connection. In the case of *Wakeham* v. *Township of St. Clair*, 91 Mich. 15 (51 N. W. 696), a horse stepped into a hole in an embankment, in which such holes were frequently caused by the action of water. The court held that, if there was nothing upon the surface of the highway at that point to give notice that a hole was being eaten away, the plaintiff could not recover, *although the township knew that such breaks were liable to occur in that embankment*, and notwithstanding its duty to keep the way in a safe condition.

In *Hembling* v. *City of Grand Rapids*, 99 Mich. 292 (58 N. W. 310), a sidewalk was out of repair. The trial court again gave the instruction:

"The defect may exist and be unknown, and the city still be liable, on the ground that the prime fault may consist in being ignorant; it being the clear principle that a want of knowledge may, under certain circumstances, imply want of due care. The general duty of the city is to exercise, through its officers, a reasonable supervision over its streets and sidewalks, and, within fairly practicable limits, to be watchful of their condition and trustworthiness, and to see that they are kept in a reasonably safe condition for public travel. Its officers cannot ignore the dictates of common sense and lessons of ordinary experience, and refuse to see and refuse to heed what others see and what others understand. Such means should be employed by the officers from time to time, in making their examinations, as usually disclose the defects to be expected."

This was held erroneous, because—

"It assumed that it was the duty of the municipality to *make such an inspection* of sidewalks *as would disclose latent defects,* if they existed. Respecting the ordinary sidewalks, there is no such duty of substructure inspection as is imposed in case of bridges or other elevated ways. In the *absence of actual* notice, municipalities are only liable for *such defects in sidewalks as are apparent or are suggested by appearances,* or which are disclosed by *a test in the nature of the ordinary use* of such walks."

Here, again, is some language which can with some plausibility be said to support the plaintiff's contention; but the fact remains that it clearly limits the liability to the question of notice, either actual, or such as should put a prudent man on inquiry, *and of itself create a duty to examine.* The statute makes no distinction between sidewalks and bridges.

In *Aben* v. *Township of Ecorse,* 113 Mich. 9 (71 N. W. 329), an examination *was* made, and Mr. Justice Moore held that there was a question for the jury *as to notice.*

In *Snyder* v. *City of Albion,* 113 Mich. 280 (71 N. W. 476), Mr. Justice Montgomery's opinion is in line. He said:

"It is argued in the brief of defendant's counsel that, upon the whole case, the verdict should have been directed

for defendant; the principal claim being that there was no evidence that the defendant had actual notice, or that the defect was of such long standing and of such character that the defendant could be charged with constructive notice, of the defect. But, without going at length into the testimony, we think that sufficient appeared by the testimony of defendant's witnesses to warrant the jury in drawing the inference that the committee of the council had sufficient notice of the decayed condition of the timbers supporting the bridge to have called for action on the part of the city. There was evidence showing conditions which indicated that an inspection would have disclosed the condition of these timbers, and whether such inspection was timely made was a question for the jury, under the testimony in this case. The court charged the jury that notice to the city might be either actual or constructive, and that, if the condition of the bridge was such that by reasonable diligence the city should have known of its defective condition, that would be constructive notice, but *that such notice could not be presumed, unless of such long standing and of such a character as to actually arrest the attention of passers-by or of persons inspecting the bridge,* and that the burden of showing these facts was upon the plaintiff. We think this instruction sufficiently favorable to defendant."

The case of *Menard* v. *City of Bay City*, 114 Mich. 450 (72 N. W. 231), went off on the point that a loose, split plank, which had existed for a month before the accident, was an *obvious defect, of sufficiently long standing to justify submission to the jury.* Two of the justices dissented. This they could not have consistently done if a failure to inspect was of itself a ground of action, *or a fact from which notice should have been inferred.*

The case of *Bettys* v. *Township of Denver*, 115 Mich. 228 (73 N. W. 138), shows that the distinction has not been overlooked. That case raised this point; that is to say, it was claimed that the court erroneously instructed the jury that a failure to inspect in the ordinary course of duty, and without reference to any notice or information of defects, was such negligence as would support an action. The charge, as quoted in the report, is open to

such construction. But it appeared that, as given, it was not; and the case was affirmed by a unanimous court, upon the distinct proposition that an inspection actually made might be sufficient to put an officer upon inquiry, and therefore might be notice.

The last case to be noticed is *Randall* v. *Township of Southfield*, 116 Mich. 501 (74 N. W. 716). Mr. Justice MONTGOMERY said of the questions in the case:

"The questions involved were whether the stringers in question were in fact defective (and of this, as to one of them, there was abundant proof); whether the defect was of such an obvious character that the officers of the defendant charged with the care of its bridges should, in the exercise of due care, have known of the defect and repaired it (and on this point the evidence was conflicting)."

There was evidence that a decayed spot was visible on a stringer, and that it was noticed by passers-by. The judge charged that:

"It is his [plaintiff's] theory that the bridge, or south stringer of the bridge, was decayed, and broke; or, as one of the witnesses states it, that it had a decayed spot, and that they noticed it some months previous to the 27th day of September. I refer more especially to the testimony of witnesses Cook and Prince. And, that being true, the township is chargeable with constructive notice. I think I ought to say to you, and it is my duty to say to you, that if you believe the testimony of witnesses Cook and Prince (more especially the testimony of Prince) that such a decayed spot was existing in that stringer as described, and that the plaintiff did not, by his own negligence, contribute to the injury, he is entitled to recover from the township."

This court said:

"We think these instructions were error. The instructions amounted to holding that, as matter of law, such a decayed spot as described by either of these witnesses was enough, in and of itself, to amount to notice that the sleeper was unsafe. That this question was competent to be considered by the jury cannot be gainsaid; but it was

insisted by counsel for the defendant, and we think rightly, that the effect of these defects as notice should be determined by the jury. The cross-examination of Cook leaves it doubtful whether the discoloration was perceptible in dry weather, and the question of the extent of the discoloration, the appearance of the spot, its location, and what it would suggest to those having charge of the bridges of the town, were questions for the jury; the test being whether the appearances were such as to suggest to a person of ordinary skill and judgment the fact of unsafety or the necessity of further investigation, and whether such defective appearances existed for such a length of time as that their inspection at reasonable intervals would have disclosed their appearance to the inspectors."

The only thing in this opinion that can be said to sustain plaintiff's contention is the language used in stating the test to be applied, viz., the words "at reasonable intervals." Had they been left out, the language would have been susceptible of application to inspections induced by information of defects, of which the case speaks, and would have been in exact accord with the other cases. Here, again, is an expression in an opinion, not necessarily involved in the point upon which the case turned, which by implication supports plaintiff's theory, and this is all.

The case of *Woodbury* v. *City of Owosso*, 64 Mich. 239 (31 N. W. 130), is not conclusive of this question, when the whole charge of the court passed upon is considered. It quotes from many of the earlier cases. It says that the city is not an insurer, but that it could not be oblivious to matters of general knowledge and common observation. It concludes with a requirement that a want of reasonable diligence be found, and that it could not be found in the absence of express notice, unless the defective condition was of such long standing that want of knowledge of it would be regarded as negligence; *i. e.*, presumptive notice.

To hold in accordance with plaintiff's contention is to disregard the numerous cases which have said that there can be no constructive notice of latent defects, even where

an inspection is actually made, where there is nothing in the circumstances to cause the officers to suspect danger. *Blank* v. *Township of Livonia*, 79 Mich. 1, 95 Mich. 229 (44 N. W. 157, 54 N. W. 877); *McKeller* v. *Township of Monitor*, 78 Mich. 485 (44 N. W. 412); *Hembling* v. *City of Grand Rapids*, 99 Mich. 292 (58 N. W. 310); *Menard* v. *City of Bay City*, 114 Mich. 450 (72 N. W. 231).

We are, however, confronted by the construction placed upon these statutes in the *Kenockee Case*, contained in the following words:

"The words of the act of 1879 would seem to have made the township liable without regard to the question of notice; but the act has always been construed by this court that it was only liable in case of negligence, and it could not be held to be negligent until after notice, actual or constructive, that the highways or bridges were out of repair; and the act of 1887 evidently was framed to meet this view, and not to impose new conditions."

It is strenuously insisted that this was equivalent to saying that the law of 1887 must have the same interpretation that the plaintiff gives to that of 1879. The principal force that this language has arises out of the fact that, if the law was changed substantially in the matter of rights conferred (and it was in the matter of rights, if it was changed at all), the court could not have held that the plaintiff's right of action was preserved. The difficulty is really imaginary, however, if we are able to conclude, not that the law of 1887 gives the same broad right ascribed to that of 1879, but that the law of 1879 had always been limited by construction to the terms of the law of 1887. The latter is exactly what is said by Mr. Justice LONG.

Finally, whatever we may conclude from the earlier opinions themselves, Mr. Justice LONG in the *Kenockee Case* has put a construction upon the law of 1887, and the cases decided after its passage, to the effect that "townships cannot be held to be negligent until after notice,

actual or constructive, that the bridges are out of repair."
We will examine the earlier cases, and see if *they* do not
limit the liability to cases where there is actual notice, or
circumstances brought home to the officers which should
arouse the suspicion of unsafety and cause a prudent man
to ascertain the truth, not from a neglect of the perform-
ance of a routine duty of supervision, but as a result of
knowledge or information indicating danger and necessity
of investigation. The earliest case is *Township of Me-
dina* v. *Perkins*, 48 Mich. 67 (11 N. W. 812). While it
mentions the duty of inspection, the case turns upon the
facts, viz. :

"But the present case requires reference to a special
matter. When the act of 1879 began to operate, it found
the highway commissioner of Medina already well ac-
quainted with this bridge. He held in his mind the knowl-
edge of the repairing done the year before. He also held
in his mind the facts concerning the inspections then made,
and the judgments formed that the bridge was then in
good condition and safe; and no inquiry bearing on his
duty or that of the township to inspect in the short inter-
val between the time the act took effect and that when the
bridge fell can be perfect, unless it embraces these facts.
Now, considering the age and character of the bridge, the
fact of the repairing a year before, the fact of the inspec-
tions then made and their results, the appearance of the
bridge, and likewise considering all the incidents affecting
the question, was the failure, during the space between
the time the statute began to operate and the time when
the bridge fell, to examine and discover the rotten spot in
the needle-beam, a failure to use reasonable intelligence
and ordinary care and prudence, under the explanations
which have been given?"

This was under the rule there laid down, not that, if the
defendant had regularly inspected, it would have dis-
covered the defect, but that *it disregarded the warnings
within the knowledge of the township officers*, that the
bridge was old and decrepit, and had been *long suspected
as unsafe by the public.* Interpreting *Township of Me-
dina* v. *Perkins* in the light of Mr. Justice CAMPBELL'S

opinion in *Fulton Iron & Engine Works* v. *Township of Kimball*, 52 Mich. 148 (17 N. W. 733), this limitation becomes still more apparent:

"In order to recover, it became necessary for plaintiff to show, not only damage from defects in the bridge, but fault in defendant in having a bridge in such condition; and such fault could only exist where there had been failure to repair injuries which defendant either knew, or had such notice of as should have led to the removal of the mischief."

*Merkle* v. *Township of Bennington*, 58 Mich. 156 (24 N. W. 776, 55 Am. Rep. 666), throws no light upon the question.

In *Stebbins* v. *Township of Keene*, 55 Mich. 554 (22 N. W. 38), it was said by Mr. Justice SHERWOOD:

"There does not seem to be any serious contest as to how the injury occurred, nor as to the duty of the township in a case where its officers have in their charge and care the construction and maintenance of bridges, nor as to the liability of the township if the proper officers carelessly or negligently omit or fail to perform such duty after having sufficient knowledge or notice of the defective condition of a bridge, if injury ensues."

*Township of Medina* v. *Perkins* is cited and approved, and the language quoted, not excepting the portion which gives prominence to the necessity of *notice which shall move a prudent officer to make immediate search for the defect which causes an obvious condition of danger.*

It is strenuously urged that we must make a liberal, or at least logical, application of the term "constructive notice;" that constructive notice is found when the facts are such as to give rise to a conclusive presumption of notice, and therefore not subject to dispute. As it has been said that a township will be charged with notice when the defects are obvious and observed by the public, by reason of its "duty to see what others see," it is argued that the same conclusive presumption of notice arises where

the township has neglected the alleged duty of inspection, if inspection would have disclosed it. In other words, by applying the doctrine of constructive notice to these cases, the force of the proviso in the statute is nullified, and, again, we must hold that the proviso meant express notice or no notice. That would be to make a solemn legislative act yield to a rigid application of a technical term, when it is apparent that such could not have been the legislative intention. The legislature may impose such' limitations upon the term "constructive· notice," or any other technical language, as it may please, expressly or by necessary implication. What is "constructive notice?" In the case of *Jordan* v. *Pollock*, 14 Ga. 156, it was said:

"Notice is actual when it is directly and personally given to the party to be notified; and constructive, when the party, by circumstances, *is put* upon inquiry, and must be presumed to have had notice, or by judgment of law is held to have had notice. Pow. Mortg. 561, 662; 16 Vin. Abr. 2; 4 Kent, Comm. 172."

Again, in *Chesapeake, etc., R. Co.* v. *Mullins*, 94 Ky. 357 (22 S. W. 558), it was said:

"Actual notice is such notice as is required to be given in some particular way to each owner. *Constructive notice* is such as results from some public act required to be done, and in a particular manner, and of which the owners of the property upon which the burdens are imposed are required to take notice."

And in *Williamson* v. *Brown*, 15 N. Y. 359, it is said:

"Actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstance from which a jury would be warranted in inferring notice. It is a mere question of fact, and is open to every species of legitimate evidence which may tend to strengthen or impair the conclusion. *Constructive notice*, on the other hand, is a legal inference from established facts, and, like other legal presumptions, does not admit of dispute. '*Constructive notice*,' says Judge Story, 'is in its nature no more than the evidence

of notice, the presumption of which is so violent that the court will not even allow of its being controverted.' 1 Story, Eq. Jur. § 399."

In *Birdsall* v. *Russell*, 29 N. Y. 249, it was said:

"*Constructive notice* is a legal inference from established facts; and when the facts are not controverted, or the alleged defect or infirmity appears on the face of the instrument, and is a matter of ocular inspection, the question is one for the court. Whether, under a conceded state of facts, the law will impute notice to the purchaser, is not a question for the jury."

In *Kennedy* v. *Green*, 3 Mylne & K. 719, it was said:

"The doctrine of constructive notice depends upon two considerations: *First*, that certain things existing in the relation or the conduct of parties, or in the case between them, *beget a presumption so strong* of actual knowledge, that the law holds the knowledge to exist, because it is highly improbable it should not; and, next, that policy and the safety of the public forbid a person to *deny* knowledge while *he is so dealing as to keep himself ignorant*, or so as that he may keep himself ignorant, and yet all the while let his agent know, and himself, perhaps, profit by that knowledge."

In *Townsend* v. *Little*, 109 U. S. 511, it was said:

"Constructive notice is defined to be, in its nature, no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted;" citing *Plumb* v. *Fluitt*, 2 Anstr. 438, and *Kennedy* v. *Green*, 3 Mylne & K. 719.

In *Jones* v. *Smith*, 1 Hare, 43, Mr. Vice Chancellor Wigram said:

"The cases in which constructive notice has been established resolve themselves into two classes: *First*, cases in which the party charged has had actual notice that the property in dispute was in fact charged, incumbered, or in some way affected, and the court has thereupon bound him with constructive notice of facts and instruments to a knowledge of which he would have been led by an inquiry after the charge, incumbrance, or other circumstance affecting the property of which he had actual notice; and,

*secondly*, cases in which the court has been satisfied from the evidence before it that the party charged had designedly abstained from inquiry for the very purpose of avoiding notice. How reluctantly the court has applied, and within what strict limits it has confined, the latter class of cases, I shall presently consider. The proposition of law upon which the former class of cases proceeds is not that the party charged had notice of a fact or instrument which in truth related to the subject in dispute without his knowing that such was the case, but that he had actual notice that it did so relate. The proposition of law upon which this second class proceeds is *not that the party charged had incautiously neglected to make inquiries, but that he had designedly abstained from such inquiries for the purpose of avoiding knowledge,*—a purpose which, if proved, would clearly show that he had a suspicion of the truth, and a fraudulent determination not to learn it. If, in short, there is not actual notice that the property is in some way affected, and no fraudulent turning away from a knowledge of the facts which *res gestæ* would suggest to a prudent mind; if mere want of caution, as distinguished from fraudulent and willful blindness, is all that can be imputed to the purchaser,—then the doctrine of constructive notice will not apply. There the purchaser will in equity be considered, as in fact he is, a *bona fide* purchaser without notice. This is clearly Sir Edward Sugden's opinion (3 Sugd. Vend. [10th Ed.] pp. 471, 472), and with that sanction I have no hesitation in saying it is mine also."

This language was approved by the Federal Supreme Court in *Simmons Creek Coal Co.* v. *Doran*, 142 U. S. 417.

From the foregoing, we may note a distinction between cases where notice is to be found, as matter of law, from certain relations, and those where the question to be determined is whether the facts disclosed were such as to put a prudent man upon an inquiry which would result in notice of the hazardous conditions. In the former the constructive notice may necessarily follow from the mere omission of a duty, as a matter of law, while in the latter it depends—*First*, on information brought home to the officer which should directly or indirectly suggest a fact;

and, *second*, the use made of such information.   We have
seen that the authorities make a distinction between con-
structive notice (technically speaking) and that presump-
tive notice which may be found from circumstances hav-
ing a tendency to arouse suspicion, which often goes by
the same name, and which is constructive in a sense, in-
asmuch as it will be imputed from facts which should
arouse suspicion of the defective condition.   We think it
cannot be found, when this element is lacking, upon the
mere neglect to know of a condition, unaccompanied by
any circumstances which should have given rise to a sus-
picion of danger calling for investigation.

From this review of the cases, it seems manifest that
the plain provisions of the law of 1887 have been kept in
view by the court, and that while some allusions to the case
of *Township of Medina* v. *Perkins* may, at first blush,
appear to have committed the court to a broader rule of
liability than the language of the statute contemplated, an
examination of the questions at issue and decided in the
respective cases will show that this is not so.   The law
undoubtedly makes it the duty of municipalities to keep
their streets, etc., in good repair, but it does not follow that
there is a liability for a neglect of that duty.   That duty
has existed ever since Michigan has been a State, but, as
already shown, there was no such liability for many
years.   Legislation was necessary to create it, and it fol-
lows that the liability extends no further than the statute
requires.   The act plainly limits liability to a case arising
after knowledge or notice of the defect causing the injury,
whether such defect exists by reason of the negligence of
the municipality or not.   There was doubtless abundant
reason for such a proviso in the statute in the well-recog-
nized facility with which injured persons shift the respon-
sibility for accidents upon the public through the medium
of charitably inclined juries.   At all events, the law is
plain, and we should not hold that a city or township is
liable because it negligently omitted an inspection, when
the legislative intention to limit recovery to cases arising
from known defects is clear.

We do not mean to be understood as saying that notice or knowledge may not be inferred from circumstances such as the existence of an obvious defect for a period which renders a want of knowledge improbable. It has often been said that the law will presume that the municipality has notice of defects which common observation for a long time has made notorious. This has been called "constructive notice," but it has often been said that the rule does not extend to latent defects, as I have shown. To say that a neglect to inspect is actionable is to nullify the statute. In this case the defect was latent until two or three days before the accident, and then very few discovered it. The bridge was an iron one, and apparently a good one, and if the joist was rotten, and would not hold a nail, that fact could be known only by an inspection. For aught that appears, the joist did hold the nails until Saturday night before the accident. Then the plank was put back in place by the man who discovered that it was loose, and when that was done it would give no sign of the defect. Monday or Tuesday night it was gone, and the sewer crock was laid over it. But nothing shows that it was brought to the knowledge of the city before the accident happened. We are of the opinion there was no evidence from which notice could be properly inferred, and that the judgment should be reversed, and a new trial ordered.

LONG and GRANT, JJ., concurred with HOOKER, J.

MONTGOMERY, C. J. (*dissenting*). In my opinion, the reasoning and conclusions of my Brother HOOKER overrule three cases decided by this court. This being so, I do not deem it necessary to attempt to construe this statute, as would be proper if the question were not *stare decisis*.

MOORE, J. (*dissenting*). Plaintiff, about 9 o'clock in the evening of June 28, 1898, fell into a hole upon the sidewalk over a bridge of the defendant city. This hole

was 9 inches wide and 18 inches long.   The bridge was constructed of iron, with two driveways 17 feet wide, and a footwalk on each side 8 feet wide, with an iron railing on the outside.   It was about 10 feet from the floor of the bridge, where the plaintiff fell, to the water below.   The hole was caused by the removal of a plank. The plank and the wooden stringers underneath had been in use 15 years.   There is no testimony to show that any defect was apparent upon the surface of the bridge until the Saturday night previous to the accident, which occurred the following Tuesday.   On that night a witness stood at the outer edge of the walk, leaning upon the railing.   He inserted part of his foot under the railing, whereupon the plank upon which he was standing flew up.   The inside end of this plank and the end of the next plank were nailed to the same stringer.   The witness put the plank back in place as well as he could with his foot.   In some manner the plank had again become removed before Tuesday night, and some one had taken a part of a sewer crock and placed it over the hole.   If the crock covered the hole, it had evidently become misplaced on the night of the accident.   The plaintiff, according to one witness, said he saw something as he was walking along, and, supposing it to be a piece of brown paper, attempted to push it aside.   Failing in this, he stepped over it, and stepped into the hole.   An examination of the stringer disclosed the fact that it was decayed where the plank was nailed on, as were also other stringers at similar places.   Plaintiff recovered verdict and judgment.

The principal question arises from the refusal of the court to direct a verdict for the defendant.   It is urged that there was no actual or constructive notice, such as is required by section 2, Act No. 264, Pub. Acts 1887.   The case was submitted to the jury upon the theory that it was the duty of the defendant to exercise reasonable care in the examination and inspection of the bridge.   The record discloses that the officials of the defendant did no more than to look at the roadbed and sidewalks as they passed

over them, and that no inspection or examination was made to determine whether the stringers were sound, although they had been in use for 15 years. Was it the duty of the defendant to make a reasonable inspection and examination, from time to time, to determine the soundness and safety of the bridge?

The statute alone imposes a liability upon municipal corporations for injuries resulting from defects in their public highways, and courts cannot enlarge that liability. Under defendant's contention, a municipality owes no duty to inspect, but, after erecting a bridge, is required to do nothing more until it has actual knowledge or notice, or the appearance of the bridge is such as to indicate to the common observer that it is out of repair. An examination of the authorities convinces me that this question has been settled by the repeated adjudications of this court against the contention of the defendant. It was before the court in *Township of Medina* v. *Perkins*, 48 Mich. 71 (11 N. W. 810), wherein it was said:

"On the other hand, a defect may exist and be unknown, and the town still be liable, on the ground that the prime fault consists in being ignorant; it being a clear principle that a want of knowledge may, in given circumstances, imply a want of due care. The general duty of a township is to exercise, through its officers, a reasonable supervision over its ways and bridges, and, within fairly practicable limits, to be watchful of their condition and trustworthiness, and see that they are kept in a reasonably safe condition for public travel."

That decision was under the law of 1879, which did not contain the words, "after knowledge by or notice to," etc., contained in the act of 1887. That case has been cited with approval in nearly every case since, under the act of 1887.

It is said the law undoubtedly makes it the duty of municipalities to keep their streets, etc., in good repair, but it does not follow that there is a liability for a neglect of that duty. It is also said it has often been held the law will presume that the municipality has notice of defects

which common observation for a long time has made notorious. This has been called "constructive notice." It has been repeatedly held, since the law of 1887 was enacted, that constructive notice is sufficient to create liability. The proviso contained in the law of 1887 does not say constructive notice shall be sufficient. How, then, can the decisions holding constructive notice is sufficient be justified? If it is the duty of the municipalities to keep the streets in good repair, does it not follow that they must make such reasonable inspection as is necessary to decide whether repairs are needed? Should the highway officers live in one corner of the township, and the defective bridge be in the farthest corner from them, and the evidence should disclose they had never passed over the bridge, and no actual notice had ever been given them, the cases hold that, if the defect was so open and notorious as to be apparent, generally, to those who had occasion to go over the bridge, and continued for a considerable time, the town would have what is known in the law as "constructive notice." The township acts only through its officers. Why should it be deemed to have constructive notice when its officers have had no actual notice? Can it be said that constructive notice shall be deemed notice to the township, unless it is upon the theory that, if the officers of the municipality had made the reasonable inspection which it is their duty to make, the defect which was apparent to others would be apparent to them? If it is now to be held that there is no liability for a failure to reasonably inspect when such inspection would disclose the defect, it seems to me that, logically, the doctrine of constructive notice must fall with such holding.

The precise question now before the court was fully considered in *Moore* v. *Township of Kenockee*, 75 Mich. 332 (42 N. W. 949, 4 L. R. A. 555), and several authorities cited. The contention there made was precisely the same as that now made. The following instruction of the trial court was sustained:

"If no actual notice of the bridge being unsafe was

given to the township officers, still if they, by the exercise of reasonable care, such as men possessed of ordinary and reasonable intelligence might exercise, would have known of such condition, * * * this would answer the requirements of the statute as to notice or knowledge on the part of the defendant."

It is said the case of *Moore* v. *Township of Kenockee* arose under the law of 1879, which was expressly held to rule it, and therefore the case is not authority in this case. I cannot agree with this view. The injury occurred in August, 1886. Suit was commenced in November, 1886. The law of 1887 took effect in June of that year, while judgment was entered in the circuit court in June, 1888. The judge was asked to charge the jury that actual notice was required, and that constructive notice would not do. The court refused to so charge, and held that, if there was constructive notice, there might be liability. In discussing this feature of the case, the court cites *Township of Medina* v. *Perkins*, 48 Mich. 71 (11 N. W. 810), and *Stebbins* v. *Township of Keene*, 55 Mich. 557 (22 N. W. 37), and quotes from them at length. It is then said by Justice LONG:

"The construction of this proviso in section 2 of the act of 1887, for which defendant's counsel now contend, is that proof must be made by the plaintiff that such defects exist, and that the township has had reasonable time and opportunity to put the same in repair after *express* knowledge or information of such defects. The language of the statute is, 'after knowledge by or notice to such township.' The word 'notice' is not used as synonymous with the word 'knowledge.' Whatever fairly puts a party upon inquiry is sufficient notice, where the means of knowledge are at hand, and, if a party omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This rule has long been established, and is well settled in this State. In *Converse* v. *Blumrich*, 14 Mich. 120 (90 Am. Dec. 230), Mr. Justice COOLEY laid down the rule as follows: 'A person is chargeable with constructive notice where, having the means of knowledge, he does not use them.' The words of the act of 1879 would seem to have made the

township liable without·regard to the question of notice, but the act has always been construed by this court that it was only liable in case of negligence, and it could not be held to be negligent until after notice, actual or constructive, that the highways or bridges were out of repair; and the act of 1887 evidently was framed to meet this view, and not to impose new conditions."

I cannot avoid the conclusion that this is a construction of the proviso in section 2 of the act of 1887, and that it is a construction according to the contention of the plaintiff.

In *Blank* v. *Township of Livonia*, 79 Mich. 1 (44 N. W.. 157), Justice CHAMPLIN, after discussing the liability of the township for apparent defects, uses this language:

" In respect to latent defects in the timbers of a bridge, it is the duty of the highway commissioner to make proper and seasonable inspection to ascertain its condition as to safety for the public travel, and to exercise due care and caution in so doing to find defects; and the kind of inspection and the amount of care and caution required of him, upon which to predicate negligence in the performance of the required duty, will depend upon all the facts and circumstances of the particular case, and the particular neglect of duty must be pointed out."

In *Hembling* v. *City of Grand Rapids*, 99 Mich. 292 (58 N. W. 310), which was a sidewalk case, Justice McGRATH, speaking for the court, held that, as to sidewalks, in the absence of actual notice, municipalities were liable only for apparent defects, and that, as to ordinary sidewalks, there is no duty of substructure inspection, as is imposed in case of bridges or other elevated ways; thus clearly recognizing the duty of inspection. See, also, *Snyder* v. *City of Albion*, 113 Mich. 275 (71 N. W. 475); *Bettys* v. *Township of Denver*, 115 Mich. 228 (73 N. W. 138); *Randall* v. *Township of Southfield*, 116 Mich. 501 (74 N. W. 716).

There was evidence from which it may be fairly inferred that a reasonable.. inspection by the proper authorities

would have disclosed the defect. The case was properly submitted to the jury. I think there was no error in the admission and rejection of testimony.

Judgment should be affirmed.